Chief Judge Breitel.
 

 Claimant, once convicted and imprisoned for assault arising from alleged incest with his 11-year-old daughter, sues the State for damages for wrongful imprisonment. He claims not innocence, but that he is entitled to damages because the County Court, which tried him, lacked "jurisdiction” to prosecute the assault unless the Family Court had first considered and transferred the matter to the County Court. The Appellate Division has twice held that claimant is entitled to damages for the reason assigned by him. The State appeals.
 

 One may assume that the County Court is so lacking in power of adjudication over the subject matter as to be without competence to try the assault for which claimant had been tried. The issue, nevertheless, is whether the State is protected against a claim for false imprisonment when its admin
 
 *113
 
 istrative officials acted upon commitment papers issued by that court, a court otherwise of general criminal jurisdiction.
 

 The order of the Appellate Division should be reversed and the claim dismissed.
 

 A court, otherwise competent to determine the kind of cause before it, which has "jurisdiction” at least to determine in the first instance whether it may or should retain "jurisdiction”, has, at least, some competence over the cause. Hence, its process and mandates may not be equated with process and mandates emanating from a court totally lacking in power, any power, over subject matter. Moreover, even if such process or mandate is void, it does not follow automatically that one affected by any kind of "void” process or mandate is entitled to damages because those obliged to enforce the "void” process or mandates performed the duty imposed on them by law.
 

 Some "unlawful” commands addressed to the law’s ministers and minions must be obeyed (see, e.g., Cox, Void Order and Duty to Obey, 16 U Chi L Rev 86, esp pp 99-110). That County Court lacked power to do more than ascertain the basic facts giving the Family Court first instance jurisdiction and to transfer the action to the Family Court does not render the County Court’s process or mandate a nullity. But for article 8 of the Family Court Act, which authorizes alternative treatment of certain otherwise criminal acts between persons of specified family relationships, the competence of the County Court to have tried and convicted claimant would be unquestioned (compare Family Ct Act, § 811, with NY Const, art VI, § 11, subd a). The concept of subject matter jurisdiction uncritically applied to award claimant damages against the State would work a grave injustice and would illustrate a recurring confusion over a term of unfortunately elastic meaning.
 

 In April of 1966, claimant Nuernberger was indicted for three crimes committed on his 11-year-old daughter: incest, assault with intent to commit incest, and impairing the morals of a minor. Following a jury trial in Erie County Court, Nuernberger was convicted of both the assault and the impairment charges. The sentence imposed for the assault conviction was from three to six years; on the impairment count a suspended maximum sentence of one year was imposed. Unanimous affirmance of the conviction by the Appellate Division followed
 
 (People v
 
 Nuernberger; 31 AD2d 718). Undisputed is that claimant was imprisoned pursuant to the County Court
 
 *114
 
 commitment from April 14, 1967 until July 17, 1969, when his conviction for assault was reversed by this court and the proceedings transferred to the Family Court
 
 (People v Nuernberger,
 
 25 NY2d 179, 183).
 

 In the prior direct appeal this court noted that the record sustained claimant’s conviction for assault (25 NY2d, at p 183). Reversal, however, was required by the Family Court Act which reposes initially in the Family Court "exclusive original jurisdiction” over "acts which would constitute * * * an assault * * * between parent and child.” (Family Ct Act, § 812; see NY Const, art VI, § 13, subd b.) Of course, the Family Court may elect to transfer jurisdiction to an appropriate criminal court (Family Ct Act, §§ 811, 816, subd [a];
 
 People v Johnson,
 
 20 NY2d 220, 223).
 

 Not more than three months after his release by the Family Court, on one year’s probation on consent, claimant sued in the Court of Claims. His argument was simple. Since initial exclusive original jurisdiction over the assault charge was in Family Court, the County Court in which he had been convicted and sentenced lacked jurisdiction over both the person of the claimant and the subject matter of the proceeding. Hence, he argues, any mandates issued by the County Court were null and void, affording no protection to the custodial authorities who acted in reliance on their validity.
 

 To be sure, it has long been said and to some extent established, without examination evidently since -the common-law reports in this State, that process or mandate is void and hence cannot be relied upon where on its face it is apparent that the issuing court was without jurisdiction over the subject matter, that is, without competence to adjudicate the kind of cause before it
 
 (Savacool v Boughton,
 
 5 Wend 170, 172; cf.
 
 Harty v State of New York,
 
 29 AD2d 243, 244, affd 27 NY2d 698;
 
 Douglas v State of New York,
 
 269 App Div 521, 525, affd 296 NY 530; see, also,
 
 Troutman v State of New York,
 
 273 App Div 619, 621-622, pertaining to jurisdiction over the person). In general, the statement is true, except that it does not account for the power of a court to determine that it has no kind of jurisdiction over the category of cause before it (Family Ct Act, § 813; see Restatement, Judgments, § 10, Comment
 
 a;
 
 see, also, Dobbs, Validation of Void Judgments: Bootstrap Principle, 53 Va L Rev 1003, 1005-1006, 1009-1014).
 

 This case, however, does not yield to the facile classification suggested by the traditional statement of the rule. To begin
 
 *115
 
 with, not every crime between members of a family is cognizable as a Family Court offense (Family Ct Act, § 812;
 
 People v Lewis,
 
 29 NY2d 923, 924 [incest not within Family Court’s exclusive original jurisdiction]). Illustrative is the impairment charge for which claimant was convicted
 
 (People v Nuernberger, 25
 
 NY2d 179, 182,
 
 supra).
 
 Had the sentence imposed for impairing the morals of a minor not been suspended, there would be no question but that claimant could have been committed to prison by order of County Court. And even were the instant conviction so clearly one to be initially resolved only in Family Court, the custodial authorities criticized by claimant may have assumed, reasonably, that the County Court proceeding took place only after the Family Court determined, as it could under the statute, that the matter should be criminally tried (Family Ct Act, § 816). Not until this court reversed was it "clear” that the commitment issued pursuant to the judgment of conviction suffered from a "facial” invalidity, if that it was.
 

 It is an encyclopedia commonplace that "[w]here a court is without jurisdiction in the particular case, its acts and proceedings can be of no force or validity, and are a mere nullity and void” (21 CJS, Courts, § 116). However deceptively attractive and convenient, this commonplace is both too simple and too broad. Definitions of "jurisdiction” are too varied and the consequences flowing from defective "jurisdiction” too diverse. See
 
 Lacks v Lacks,
 
 41 NY2d 71, 74, decided herewith; Ehrenzweig, Conflict of Laws, § 25, pp 72-73; Leflar, American Conflicts Law, § 3, pp 4-6.) In fact, discerning analysis would reveal that the absence of power of adjudication in a particular cause does not, in and of itself, automatically deprive a court’s acts and proceedings of their validity.
 

 Indeed, this court has recognized that a defect in a court’s "jurisdiction”, because a defendant had not been sentenced for a six-year period after verdict, may be the basis for habeas corpus relief, but no ground on which to recover damages for false imprisonment. Thus, in
 
 People ex rel. Harty v Fay
 
 (10 NY2d 374) defendant was successful in procuring his release from prison but his subsequent claim for false imprisonment was rejected
 
 (Harty v State of New York,
 
 27 NY2d 698, affg 29 AD2d 243,
 
 supra).
 

 In rejecting the damage claim, this court evidently accepted the Appellate Division interpretation of the prior Court of Appeals holding of lack of jurisdiction as really only illegality
 
 *116
 
 of sentence. Whether this reassessment was calculated to avoid the unfortunate consequences routinely associated with defective "jurisdiction” or to recast the prior holding in the light of the versatile use of the term "jurisdiction” is not important. What is important is that from a comparison of the results in the two litigations, one must conclude that notwithstanding the absence of "jurisdiction” for purposes of sustaining the sentence involved, power remained with the sentencing court sufficient to protect officials who carried out its mandates. In short, the
 
 Harty
 
 cases are an ideal example that "jurisdiction” is not a term of a single meaning and none of its uses has an invulnerable definition.
 

 In line with the glib statement that absence of subject matter jurisdiction alone renders all process and mandates emanating from a court null, some courts have not made criminal the acts of a person resisting an arrest made pursuant to a warrant issued by a court said to be without "jurisdiction” (see
 
 People v Craig,
 
 59 Cal 370; Criminal Liability for Obstructing Process as Affected by Invalidity or Irregularity of Process, Ann., 10 ALR3d 1146, esp § 8; see, also,
 
 Witherspoon v State,
 
 42 Tex Cr Rep 532, 536). In this State, however, automatic recourse to the purported rule with all its unlimited generalities has been challenged
 
 (People v Warren,
 
 5 Hill 440; cf.
 
 People v Briggs,
 
 19 NY2d 37, 41-42). As noted in
 
 People v Warren (supra,
 
 p 440), involving a parallel problem and analysis, "[ajlthough the inspectors had no jurisdiction of the subject matter, yet as the warrant was regular on its face, it was a sufficient authority * * * to make the arrest, and the defendant had no right to resist the officer.”
 

 Conclusive in demonstrating that the voidness rule is not absolute is the exception that, in some circumstances, a court’s erroneous determination that it has "subject matter jurisdiction” is subject to the doctrine of
 
 res judicata
 
 and, hence, is not vulnerable to collateral attack
 
 (O’Donoghue v Boies,
 
 159 NY 87, 99, 103, 105-106 [opns per O’Brien, J., and Parker, Ch. J.];
 
 Bolton v Schriever,
 
 135 NY 65, 74; Restatement, Conflicts 2d, § 97, and Comments
 
 b, c;
 
 Restatement, Judgments, § 10, subd 1; Goodrich, Conflict of Laws [4th ed], § 23, p 38; Ehrenzweig, Conflict of Laws, § 57, subd a, pp 207-208; see
 
 Matter of Doey v Howland Co.,
 
 224 NY 30, 38-39; cf.
 
 Vander v Casperson,
 
 12 NY2d 56, 59 [jurisdiction over defendants]). While the scope of this exception is no clearer than the rule to which it is an exception, key is that courts without so-
 
 *117
 
 called "subject matter jurisdiction” nonetheless issued binding orders. (See, generally, Dobbs, 53 Va L Rev 1003, 1009-1014.)
 

 By now, it should be evident that the competence of a court to entertain matters in categories over which it has power to adjudicate may be quite different from its power to adjudicate particular causes which arise in the categories (see
 
 Bullymore v Cooper,
 
 46 NY 236, 241-242; cf.
 
 O’Donoghue v Boies,
 
 159 NY 87, 103, 107-108 [opn per Parker, Ch. J.],
 
 supra).
 
 As early as 1884, general "jurisdiction over the subject matter” was distinguished from jurisdiction in particular causes: "a ministerial officer is protected in the execution of process regular on its face, issued by a court, officer or body having general jurisdiction of the subject-matter, or jurisdiction to issue it under special circumstances, although in fact jurisdiction of the person or subject-matter did not exist in the particular case.”
 
 (Woolsey v Morris,
 
 96 NY 311, 315.) But even this distinction does not solve all the problems.
 

 The voidness rule is applied sketchily. The exceptions to the rule are applied equally sketchily. The rule and its exceptions were engendered by independent and different purposes. By encouraging self-help with impunity, the rule preserves an effective safeguard against judicial usurpation of power. The exceptions protect administrative officials from the consequences of doing what they are required to do by law
 
 (Woolsey v Morris,
 
 96 NY 311, 315,
 
 supra).
 

 And, of course, the troubles and the tensions between the rule and exceptions are both caused by and sheltered by the elastic and versatile definition and use of the term "jurisdiction”. Sometimes the word means power to adjudicate (e.g.,
 
 Hunt v Hunt,
 
 72 NY 217, 228;
 
 Cooper v Davis,
 
 231 App Div 527, 529). Sometimes it means power to enforce orders against a person (e.g.,
 
 People ex rel. Harty v Fay,
 
 10 NY2d 374, 379,
 
 supra).
 
 Sometimes it means power to execute commitments against particular property (e.g.,
 
 Woolsey v Morris,
 
 96 NY 311, 315-316,
 
 supra).
 
 Sometimes it means power to adjudicate over a category of cases and another time it means power to adjudicate a particular case (compare
 
 O’Donoghue v Boies,
 
 159 NY 87, 103, 107-108 [Parker, Ch. J.], with
 
 id.,
 
 at pp 97-99 [O’Brien, J.],
 
 supra).
 
 Sometimes this lack is fatal to the validity of any act of the tribunal. And sometimes it results in valid process or mandate because the issuing court, as in this case, was not wholly without competence to adjudicate something in the action before it.
 

 
 *118
 
 With respect to Nuernberger’s claim the result should be evident. It may be sustained only if the confusion in the term and concept of "jurisdiction” is allowed to generate still another anomaly in law and justice. The fact is that the County Court had general jurisdiction over criminal actions of the very categories for which claimant was tried and convicted. It also had at least the initial power to adjudicate whether the fact complex required transfer to the Family Court because of its initial exclusive original jurisdiction. Hence, the court was not without some power to adjudicate and its fault was no greater than that of error which remains uncorrected until the appeal was finally resolved in the State’s highest court. To say that in such circumstances the mandates of the County Court were void is to deny the reality of the legally constituted courts which issued those mandates and the recognition which would be accorded those mandates in other actions and proceedings until reversal on direct appeal.
 

 Accordingly the order of the Appellate Division should be reversed, without costs, and the claim dismissed.
 

 Judges Jasen, Jones, Wachtler, Fuchsberg and Cooke concur; Judge Gabrielli taking no part.
 

 Order reversed, etc.