FRYERSON

v.

OHIO DEPARTMENT OF REHABILITATION AND CORRECTION.

2002-Ohio-5757.]

Court of Claims of Ohio.

No. 2001–02473.

Decided Oct. 9, 2002.

Paul Mancino Jr., for plaintiff.

Betty D. Montgomery, Attorney General, and James P. Dinsmore, Assistant Attorney General, for defendant.

FRED J. SHOEMAKER, Judge.

{¶ 1}  Plaintiff brings this action against defendant alleging false imprisonment.  The matter was submitted to the court on the issue of liability based upon agreed stipulations.

{¶ 2}  On January 30, 1996, a police officer filed charges in the Cuyahoga County Court of Common Pleas, Juvenile Division, against plaintiff, age 16, in connection with two separate incidents occurring in January 1996, wherein, singularly, the alleged victims in the two incidents were Lawrence Robinson and Thomas Jones.  The complaint alleged that plaintiff was a delinquent child for committing acts that would constitute criminal offenses if he had been an adult, which include kidnapping, aggravated robbery, and felonious assault as related to the incident involving Robinson;  and receiving stolen property, in the incident involving Jones.  The prosecutor made a motion to amend the receiving stolen property charge to aggravated robbery, but the juvenile court denied the motion.

{¶ 3}  Pursuant to R.C. 2151.26, the juvenile court conducted a bindover hearing.  Following the hearing, the court ordered the mandatory bindover of plaintiff to the general division of the Cuyahoga County Court of Common Pleas for trial as an adult on charges of kidnapping and aggravated robbery in connection with the incident involving Robinson.

{¶ 4}  In case No. 340376, a grand jury indicted plaintiff for offenses against both Robinson and Jones.  While pretrial proceedings were under way in that case, a grand jury indicted plaintiff in case No. 344010 on one count of robbery

and one count of grand theft of an automobile, both offenses arising in connection with the incident involving Jones. On October 21, 1996, at the state's request, the trial court dismissed the indictment in case No. 340376.

{¶ 5} On October 22, 1996, a jury trial commenced in case No. 344010. The jury ultimately found plaintiff guilty of robbery and grand theft, and the trial court imposed a sentence of 8 to 15 years.

{¶ 6} Plaintiff's appeal to the Cuyahoga County Court of Appeals was stayed pending resolution of a petition for a writ of habeas corpus filed by plaintiff with the Belmont County Court of Appeals. By decision rendered on October 25, 1997, the Belmont County Court of Appeals denied plaintiff's petition, holding that he had an adequate remedy at law by way of motion for leave to appeal his criminal conviction. Plaintiff appealed the denial of his petition to the Supreme Court of Ohio, and by decision rendered on February 17, 1999, the Supreme Court affirmed the judgment of the court of appeals. *State ex rel. Fryerson v. Tate* (1999), 84 Ohio St.3d 481, 705 N.E.2d 353.

{¶ 7} The stay of plaintiff's appeal with the Cuyahoga County Court of Appeals was lifted and by decision filed on February 22, 2000, that court reversed and remanded the case to the juvenile court. The appellate court found that, while the complaints charging plaintiff with acts relating to Robinson were subject to a mandatory bindover under R.C. 2151.26(B), the complaint charging plaintiff with the act that would have constituted receipt of stolen property, related to Jones, was not subject to a mandatory bindover under the statute. Thus, the court reversed plaintiff's conviction on the charges relating to Jones, and the case was remanded to the juvenile court with instructions that the prosecution of plaintiff as an adult for the charges related to Jones was "void ab initio." *State v. Fryerson* (Feb. 10, 2000), Cuyahoga App. No. 71683, 2000 WL 146567.

{¶ 8} Following remand to the juvenile court, the prosecutor elected not to continue the prosecution of plaintiff for charges relating to Jones. Based upon an order of the juvenile court, defendant released plaintiff from custody on May 26, 2000.

{¶ 9} The issue before the court in this case is whether defendant can be held liable to plaintiff for false imprisonment where plaintiff's confinement followed a conviction on charges not properly bound over to that court. The offense of false imprisonment occurs when a defendant acts " 'to confine one intentionally without lawful privilege and against his consent within a limited area for any appreciable time, however short.' 1 Harper and James, The Law of Torts, 226, Section 3.7 (1956)." *Feliciano v. Kreiger* (1977), 50 Ohio St.2d 69, 71, 4 O.O.3d 158, 362 N.E.2d 646.

{¶ 10}   Plaintiff cites language from *Bennett v. Ohio Dept. of Rehab. & Corr.* (1991), 60 Ohio St.3d 107, 111, 573 N.E.2d 633, in which the court stated that " 'an action for false imprisonment cannot be maintained where the wrong complained of is imprisonment in accordance with the judgment or order of a court, unless it appears that such judgment or order is void.' "   Plaintiff argues that, because the appellate court in the instant case concluded that the judgment of the common pleas court was "void ab initio," it necessarily follows that he is entitled to judgment on his claim for false imprisonment.

{¶ 11}   In response, defendant relies in part upon *Tymcio v. State* (1977), 52 Ohio App.2d 298, 6 O.O.3d 310, 369 N.E.2d 1063, in which the headnote states: "An action cannot be maintained in the Court of Claims against the state on behalf of one determined to have been wrongfully incarcerated by order of a court of common pleas."   Under the facts of that case, plaintiff was incarcerated during the pendency of an appeal and his conviction was subsequently reversed by the Supreme Court of Ohio. In *Tymcio,* the appellate court noted that the judgment of the common pleas court "was not void, although it was found to be voidable, to the extent that the judgment was reversed on appeal by the Supreme Court and the cause was remanded for further proceedings."   Id. at 303, 6 O.O.3d 310, 369 N.E.2d 1063.

{¶ 12}   Although the cases cited by plaintiff and defendant discuss generally the effect of a "void" judgment, none of those cases involves a fact pattern in which a claim for false imprisonment was predicated upon a purported "void" judgment.   However, in a case from another jurisdiction, *Nuernberger v. State* (1976), 41 N.Y.2d 111, 390 N.Y.S.2d 904, 359 N.E.2d 412, the New York Court of Appeals addressed a claim similar to the one raised in the instant case.   In *Nuernberger,* claimant was indicted for various crimes, which included assault against his 11–year–old daughter.   Following a jury trial in the county court, claimant was convicted and sentenced.   Pursuant to the county court's commitment order, claimant was imprisoned from April 1967 until July 1969, at which time the appellate division reversed the assault conviction and remanded the proceedings to the family court, the court of original jurisdiction.   Claimant subsequently sued the state for damages based upon a claim of false imprisonment.   The Court of Claims of that state entered judgment in favor of claimant, awarding damages against the state.

{¶ 13}   On appeal, the New York Court of Appeals reversed.   The issue before the court of appeals was whether the state is protected against a claim for false imprisonment where its administrative officials acted upon commitment papers issued by a court of general criminal jurisdiction even though it is later determined that the county court lacked the power to adjudicate the charge.   The court observed that "[a] court, otherwise competent to determine the kind of

cause before it, which has 'jurisdiction' at least to determine in the first instance whether it may or should retain 'jurisdiction,' has, at least, some competence over the cause." Id., 41 N.Y.2d 111, 390 N.Y.S.2d 904, 359 N.E.2d at 413. Thus, the process and mandate of such court "may not be equated with process and mandates emanating from a court totally lacking in power, any power, over subject matter. Moreover, even if such process or mandate is void, it does not follow automatically that one affected by any kind of 'void' process or mandate is entitled to damages because those obliged to enforce the 'void' process or mandates performed the duty imposed on them by law." Id.

■ {¶ 14} In the present case, similar to the facts of *Nuernberger*, the general division of the common pleas court lacked "jurisdiction" to sustain the sentence imposed; however, such court was not "wholly without competence to adjudicate something in the action before it." Id., 41 N.Y.2d 111, 390 N.Y.S.2d 904, 359 N.E.2d at 416. The court notes that, in plaintiff's action for a writ of habeas corpus, the Supreme Court of Ohio stated that plaintiff was "not challenging the bindover"; rather, he was "challenging the validity of subsequent events that took place *after* a technically correct bindover occurred." *State ex rel. Fryerson*, supra, at 485, 705 N.E.2d 353. The Supreme Court held that "[t]he bindover proceedings and entry * * * did comply with applicable bindover procedures," and that, "[a]lthough the juvenile court may have transferred appellant only on the charges involving Robinson, appellant was correctly bound over on those charges." Id. Further, "[o]nce appellant was properly bound over, the common pleas court had jurisdiction to proceed. It was only at the time of the proceedings in the common pleas court that possible error occurred, in that appellant had been bound over on charges involving Robinson and was prosecuted on the charges involving Jones." Id.

{¶ 15} Thus, at least in the initial proceedings following the bindover, the common pleas court possessed some jurisdiction in the matter, albeit not the jurisdiction to sentence plaintiff on the charges related to Jones. Further, the Cuyahoga County Court of Appeals, in remanding the matter to the juvenile court, recognized the potential for "possible resumption of bindover proceedings" (i.e., a discretionary bindover) to the common pleas court.

■ {¶ 16} Here, the court finds persuasive the reasoning of the *Nuernberger* court that one affected by any kind of void process or mandate is not automatically entitled to damages where "those obliged to enforce the 'void' process or mandates performed the duty imposed on them by law." Id., 41 N.Y.2d 111, 390 N.Y.S.2d 904, 359 N.E.2d at 413. In the present case, defendant did not initiate the proceedings leading to plaintiff's confinement; rather, defendant was under a statutory duty to maintain custody of plaintiff pursuant to a court's sentencing entry that did not appear to be invalid on its face. See

*Underwood v. State* (June 28, 1983), Franklin App. No. 82AP–849, 1983 WL 3591 (the state did not seek plaintiff's commitment to state hospital; even assuming that plaintiff was wrongfully committed to hospital by probate court, no claim for relief would exist against the state in the Court of Claims); *Kenney v. Fox* (C.A.6, 1956), 232 F.2d 288 (doctors at state mental institution could not go behind a court order of commitment which on its face appeared valid, and doctors were not amenable to action for damages for alleged wrongful commitment). There is also no evidence that defendant had knowledge that the judgment of sentence by the common pleas court was improper, nor would defendant have had reason to anticipate that an appellate court would subsequently reverse the trial court's sentence as void ab initio. The court concludes that, where the court of common pleas had some jurisdiction over plaintiff at the time of the order of bindover, the court's entry of sentence did not give rise to an action against defendant for false imprisonment, where the charges relating to the offense against Jones, although erroneous, appeared valid on the face of the order of commitment.

{¶ 17} In regard to plaintiff's reliance upon *Bennett,* supra, the court agrees with defendant that the instant case is distinguishable from the facts of that case. In Bennett, prison officials were notified of the alleged lack of any "colorable" basis for plaintiff's confinement, but nevertheless continued to confine him, leading that court to hold that, "in the absence of an intervening justification, a person may be found liable for the tort of false imprisonment if he or she intentionally continues to confine another despite knowledge that the privilege initially justifying that confinement no longer exists." Id., 60 Ohio St.3d at 109–110, 573 N.E.2d 633. In this case, plaintiff made no claim that defendant incarcerated him subsequent to the time the juvenile court ordered his release. Accordingly, based upon the agreed facts of this case, the court finds that plaintiff's claim for false imprisonment must fail.

{¶ 18} Therefore, judgment shall be rendered in favor of defendant.

Judgment for defendant.

FRED J. SHOEMAKER, J., retired, of the Franklin County Court of Common Pleas, sitting by assignment.