*445 OPINION OF THE COURT
Francis T. Collins, J.
Defendant moves for summary judgment dismissing the claim and the claimant cross-moves for partial summary judgment on the issue of liability pursuant to CPLR 3212.
The claim herein alleges:
“Third: This claim is for damages suffered by claimant by reason of the negligence of the State of New York, its officers, agents or employees in the hiring, retention and training of its officers, agents and employees and the negligent maintenance of its records and databases. The acts of the State of New York, its officers, agents or employees resulted in the false arrest, false imprisonment, and malicious prosecution of Claimant in violation of his statutory and constitutional rights.”
Counsel for the parties stipulated to the following relevant facts: On March 23, 2003 claimant pleaded guilty to criminal possession of a weapon in the third degree in Supreme Court, Kings County. The court failed to impose a period of postrelease supervision (PRS) at the time the claimant was sentenced to a two-year determinate sentence on March 27, 2003 (defendant’s exhibit A ¶ 3). Claimant was released from prison on October 8, 2004 at which time a three-year period of PRS was administratively imposed by the Department of Correctional Services (DOCS). The maximum expiration of claimant’s two-year sentence was January 24, 2005. On March 22, 2005, claimant was declared delinquent upon a violation of the conditions of his parole. On March 28, 2007, claimant was arrested and imprisoned as a result of the execution of a parole violation warrant. Claimant petitioned for a writ of habeas corpus on May 2, 2007 which was granted by the Honorable Joseph J. Dawson, Acting Supreme Court Justice, on July 10, 2007. The claimant was released from custody on that same date.
In support of its motion for summary judgment, defendant argues that DOCS is immune from liability because the term of PRS imposed upon the claimant was statutorily mandated. Defendant argues that DOCS, therefore, was acting under the “color of law or regulation” and in a discretionary, quasi-judicial capacity at the time PRS was imposed (see affirmation in support of Michael Krenrich ¶ 9, citing Gittens v State of New York, 132 Misc 2d 399, 402 [1986]). Defendant also argues that claimant has no private right of action under Penal Law § 70.45 *446 because the intent of the Legislature in enacting the statute was to subject individuals such as the claimant to PRS for the protection of the public. Since the intention of the Legislature was to protect the public at large, defense counsel argues that no private right of action exists under the statute as the claimant was not “one of the class for whose particular benefit the statute was enacted” (affirmation in support of Michael Krenrich ¶ 14).
With respect to the malicious prosecution cause of action, the defendant argues that the claim fails as a matter of law because DOCS was acting in accordance with the prevailing statutory mandate and without malice in imposing the term of PRS. Lastly, the defendant argues that this court lacks jurisdiction to hear the causes of action premised upon a violation of the claimant’s constitutional rights.
In support of his cross motion and in opposition to the defendant’s motion, the claimant cites, inter alia, the Court of Appeals decision in Matter of Garner v New York State Dept. of Correctional Servs. (10 NY3d 358 [2008]) for the proposition that the imposition of a term of PRS lies within the exclusive province of the sentencing court and beyond DOCS’ jurisdiction. Claimant argues that DOCS is not immune from liability because it was acting in violation of established law providing that only a sentencing judge may pronounce the PRS component of a defendant’s sentence (see People v Sparber, 10 NY3d 457 [2008]). Claimant concludes that he has established his prima facie entitlement to summary judgment on the causes of action for false arrest and imprisonment in that the determination in the habeas corpus proceeding necessarily decided the issue of the illegality of the arrest and imprisonment. With respect to the cause of action for malicious prosecution, claimant contends that malice may be inferred as “DOCS not only egregiously deviated from acceptable procedures, but DOCS acted illegally” (mem of law of Samiya N. Mir at 10). Lastly, in response to defendant’s argument that no statutory cause of action under Penal Law § 70.45 is stated, claimant contends that the defendant has mischaracterized his argument in that he is pursuing only common-law causes of action for negligence, false arrest, false imprisonment, and malicious prosecution “because he was arrested and imprisoned based on a PRS sentence that did not legally exist” (mem of law of Samiya N. Mir at 12).
To establish a cause of action for false imprisonment a claimant must show that “(1) the defendant intended to confine *447 him, (2) the [claimant] was conscious of the confinement, (3) the [claimant] did not consent to the confinement and (4) the confinement was not otherwise privileged” (Broughton v State of New York, 37 NY2d 451, 456 [1975], cert denied sub nom. Schanbarger v Kellogg, 423 US 929 [1975]). While the first three factors are not disputed, it is the fourth which poses the most difficulty in this case.
In Matter of Garner (supra), the Court of Appeals held that a term of PRS “is not automatically included in the pronouncement of a determinate sentence, and thus a defendant has a statutory right to have that punishment imposed by the sentencing judge” (10 NY3d at 363). The Court noted that its holding was “without prejudice to any ability that either the People or DOCS may have to seek the appropriate resentencing of a defendant in the proper forum” (id. at 363 n 4). Decided the same day as Matter of Garner, People v Sparber (supra) rejected the argument that expungement is the proper remedy for a term of postrelease supervision improperly imposed by DOCS. Rather, the Court stated that “[t]he sole remedy for a procedural error such as this is to vacate the sentence and remit for a resentencing hearing so that the trial judge can make the required pronouncement” (10 NY3d at 471). The Court specifically noted that “there exists no procedural bar to allowing the sentencing court to correct its PRS error . . . [T]he failure to pronounce the required sentence amounts only to a procedural error, akin to a misstatement or clerical error, which the sentencing court could easily remedy” (id. at 472). The orders in each of the five cases reviewed on appeal in Sparber were therefore modified to the extent of remitting the cases to the Supreme Court for resentencing (see also People v Collado, 11 NY3d 888 [2008]).
In response to Garner and Sparber, the Legislature adopted Correction Law § 601-d, effective June 30, 2008 (L 2008, ch 141). As noted by the court in People v Peer (22 Misc 3d 620 [2008]), “[t]he legislative history of this statute reveals a clear legislative intent to provide ‘a framework for a prompt, fair and careful response to recent decisions in which the Court of Appeals struck down longstanding practices for determining the supervision terms of violent felons’ ” (id. at 622, quoting Senate Introducer’s Mem in Support of NY Senate Bill S8714, Bill Jacket, L 2008, ch 141). The statute sets forth the appropriate procedure for identifying and correcting the sentences of those individuals for whom the order of commitment does not indicate a term of PRS (Correction Law § 601-d [1]), but does not fore *448 close any other proceedings pursuant to CPL article 440 or article 70 or 78 of the CPLR (see Correction Law § 601-d [8]). Simultaneously with the enactment of Correction Law § 601-d, the Legislature enacted Penal Law § 70.85, which permits the court, upon the consent of the district attorney, to reimpose the originally imposed determinate sentence without any term of postrelease supervision. Thus, notwithstanding the “combined command” of Penal Law § 70.00 (6) and § 70.45 (1) that a period of postrelease supervision be included in certain determinate sentences (Sparber, 10 NY3d at 469), it is clear that the imposition of a term of PRS is not necessarily occurring in all cases (see People v Faulkner, 55 AD3d 924 [2008]; People ex rel. Foote v Piscotti, 51 AD3d 1407 [2008]; People ex rel. Pamblanco v Warden, Rikers Is. Correctional Facility, 22 Misc 3d 776 [2008]; People v Washington, 21 Misc 3d 349 [2008]; Matter of Capron v Virts, 2008 NY Slip Op 32517[U] [2008]; compare People v Aguirre, 55 AD3d 846 [2008]; People v Craig, 51 AD3d 559 [2008]; People v Edwards, 51 AD3d 540 [2008], lv denied 11 NY3d 787 [2008]; People ex rel. Lewis v Warden, Otis Baum Correctional Ctr., 51 AD3d 512 [2008]).
The Appellate Division, Third Department, recently stated in Matter of State of New York v Randy M. (57 AD3d 1157 [2008]) that even where a defendant is resentenced so as to impose the statutorily mandated period of postrelease supervision, “[t]he court’s later resentencing of respondent did not operate retroactively to cure the illegal imposition of postrelease supervision[ ] meaning respondent could not validly be punished for violating the terms of postrelease supervision until after it was imposed by a court” (id. at 1159, citing People ex rel. Benton v Warden, Adolescent Receiving Detention Ctr., 20 Misc 3d 516, 521 [2008]; see also Matter of Jackson v Cuomo, 20 Misc 3d 1115[A], 2008 NY Slip Op 51356[U] [2008]). Benton (supra), which was cited with approval by the Court in Matter of State of New York v Randy M. (supra), specifically held that where a term of postrelease supervision is a nullity because it was administratively imposed by DOCS rather than the sentencing court, resentencing the defendant nunc pro tunc to add the term of postrelease supervision cannot “cure the infirmity of a petitioner being violated for a PRS that was imposed by DOCS” (20 Misc 3d at 521). Nevertheless, for the reasons which follow, the court holds that absent either an allegation or inference that the parole warrant or order directing the claimant’s confinement for parole violations was invalid on its face, the ar *449 rest and confinement for the parole violation was privileged and “sufficient to protect officials who carried out its mandates” from liability for false imprisonment (Nuernberger v State of New York, 41 NY2d 111, 116 [1976]). Even if such conduct could form the basis for liability, however, the court holds that the defendant is immune from liability under the circumstances of this case.
It is well settled that “where a facially valid order issued by a court with proper jurisdiction directs confinement, that confinement is privileged and everyone connected with the matter is protected from liability for false imprisonment” (Holmberg v County of Albany, 291 AD2d 610, 612 [2002], lv denied 98 NY2d 604 [2002] [citation omitted]; see also Nuernberger v State of New York, supra; Nastasi v State of New York, 275 App Div 524 [1949], affd 300 NY 473 [1949]). Likewise, an arrest and imprisonment are privileged where the arrest is “made pursuant to a warrant valid on its face and issued by a court having jurisdiction of the crime and person . . . and this is so even though the process may have been erroneously or improvidently issued” (Boose v City of Rochester, 71 AD2d 59, 66 [1979]; Middleton v State of New York, 54 AD2d 450 [1976], affd 43 NY2d 678 [1977]; Broughton v State of New York, 37 NY2d at 457-458). Absent an allegation in the claim, “express or infer-able,” that the parole warrant or order of commitment was invalid on its face or that the issuing entity lacked jurisdiction to issue the warrant, a claim for false arrest and false imprisonment lacks merit as a matter of law (Ferrucci v State of New York, 42 AD2d 359, 361 [1973], affd 34 NY2d 881 [1974]; Boose v City of Rochester, supra; Mullen v State of New York, 122 AD2d 300 [1986], lv denied 68 NY2d 609 [1986], cert denied 480 US 938 [1987]).
Importantly, the confinement is no less privileged where a defendant has been successful in procuring his release from prison in a habeas corpus proceeding. Thus, the fact that the detainer has been determined to be illegal in a habeas corpus proceeding does not render the State liable in a subsequent claim for false imprisonment (Nuernberger v State of New York, supra; Harty v State of New York, 29 AD2d 243 [1968], affd 27 NY2d 698 [1970]). There is simply “no remedy against the State for an illegal confinement if it is made pursuant to an order valid on its face when issued” (Jones v State of New York, 31 AD2d 992, 993 [1969]; see also Corcoran v State of New York, 30 AD2d 991 [1968], affd 24 NY2d 922 [1969]).
*450 The facts in Holmberg v County of Albany (supra) and Nastasi v State of New York (supra) are analogous to those in the case at bar and illustrate the point well. In Holmberg, the plaintiff argued that the County mistakenly added three days of additional confinement in calculating the length of his jail term as reflected in his sentencing minutes and the certificate of conviction. Plaintiff alleged that had he been released on his correct release date, he would not have violated the conditions of his work release program when he failed to appear for work following his arrest for driving while intoxicated and would not have spent additional time in jail. The Court found the order valid on its face and “ ‘sufficient to protect officials who carried out its mandates’ from liability for false imprisonment” (Holmberg v County of Albany, 291 AD2d at 613, quoting Nuernberger v State of New York, 41 NY2d at 116).
Similarly in Nastasi v State of New York (supra) the claimant was declared delinquent while on parole and a warrant was issued for his arrest. Claimant was released to parole authorities and returned to prison in New York five years later after serving a sentence of imprisonment in another state. He thereafter secured his release in a habeas corpus proceeding upon a finding that his maximum sentence had expired prior to his return to prison in New York. Notwithstanding the finding in the habeas corpus proceeding that the confinement was illegal, the Court stated the following (275 App Div at 525-526):
“[I]t does not necessarily follow . . . that a determination of illegality of imprisonment gives rise ipso facto to a claim for damages for false arrest and imprisonment. Since parole was not permissible under the circumstances presented, the declaration of delinquency for parole violation and the acts of the authorities in retaking claimant . . . and in detaining him . . . were improper. There is nothing in the record, however, to indicate that the declaration of delinquency and the warrant for claimant’s arrest were not entirely valid on their face when issued . . .
“The arresting officers and the confining authorities were under a duty to comply with this declaration and warrant, the invalidity of which was not determined until the decision in the habeas corpus proceeding had been handed down. They were not obliged to institute an inquiry in order to satisfy themselves that no error had been committed. They *451 were confronted with what appeared to be a valid directive for the arrest and incarceration of the claimant, and in yielding obedience to it they did not subject themselves or the State to an action for false arrest and imprisonment.”
The above-cited cases illustrate the point that even where the confinement is determined to be illegal, as it was here, liability for false arrest and imprisonment may not follow where the warrant authorizing the arrest and confinement was valid on its face when issued. As noted by the Court of Appeals in Broughton v State of New York (supra), “an unlawful detention gives rise to a cause of action for false imprisonment’ except where the confinement was by arrest under a valid process issued by a court having jurisdiction’ ” (37 NY2d at 457, quoting Restatement [Second] of Torts § 35, Comment a [4th ed]; cf. Lynn v State of New York, 33 AD3d 673 [2006]). Conversely, the Court made clear in Broughton that “where the arrest or imprisonment is extrajudicial, that is, without legal process or color of legal authority,” the burden is on the defendant to prove probable cause in an action for false imprisonment (Broughton v State of New York, 37 NY2d at 458).
Here, the parties stipulated to the fact that “[o]n March 28, 2007, as a result of the execution of parole violation warrant number 399091, Claimant was arrested and imprisoned” (defendant’s exhibit A ¶ 9). As there is no allegation or inference that the warrant or order of commitment relating to the claimant’s parole violation were invalid on their face, no claim for false arrest or false imprisonment is stated.
Claimant’s cause of action for malicious prosecution is similarly deficient. As made clear by the Court in Broughton (supra), the essence of a claim for malicious prosecution is the perversion of proper legal procedures. “To succeed on a claim for malicious prosecution, a plaintiff must show the initiation of an action or proceeding that terminated in favor of the plaintiff, lack of probable cause for the prior action or proceeding, malice and special injury” (Fink v Shawangunk Conservancy, Inc., 15 AD3d 754, 754 [2005] [internal quotation marks and citation omitted]; see also Martinez v City of Schenectady, 97 NY2d 78, 84 [2001]; Broughton v State of New York, supra; Perryman v Village of Saranac Lake, 41 AD3d 1080, 1081 [2007]). While the initiation of a “judicial proceeding” is the sine qua non of a cause of action for malicious prosecution (Broughton, 37 NY2d at 457), it is well settled that the initiation of an administrative *452 proceeding, having sufficient attributes of a judicial proceeding, may also form the basis of a cause of action for malicious prosecution (Groat v Town Bd. of Town of Glenville, 73 AD2d 426, 429 [1980], appeal dismissed 50 NY2d 928 [1980]). As stated by the Appellate Division, Third Department, in Groat “administrative proceedings which require a hearing and trial of the issues on evidence and testimony under oath, with the right of cross-examination, have sufficient attributes of judicial proceedings to be considered judicial proceedings for the purposes of a cause of action for malicious prosecution” (id.; see also New York City Tr. Auth. v Manti, 165 AD2d 373 [1991]; Schanbarger v Baker, 59 AD2d 637 [1977]).
Although parole revocation hearings are classified as administrative proceedings, certain constitutional protections must be observed because of the serious consequences which may befall a parolee if the charges of misconduct are sustained (People ex rel. Piccarillo v New York State Bd. of Parole, 48 NY2d 76 [1979]; People v Brooks, 308 AD2d 99 [2003]; Executive Law § 259-i [3] [c], [d], [f]). Executive Law § 259-i (3) (a) (i) authorizes the issuance of a warrant for retaking a person released to postrelease supervision following a report by a parole officer that he or she reasonably believes an individual subject to postrelease supervision has either “lapsed into criminal ways or company, or has violated one or more conditions of his . . . post-release supervision.” “[S]uch parole officer shall report such fact to a member of the board of parole, or to any officer of the division designated by the board, and thereupon a warrant may be issued for the retaking of such person” (id.; see also 9 NYCRR 8004.2 [a], [c]). A preliminary hearing is required unless waived and the standard of proof required is “probable cause to believe that the . . . person under post-release supervision has violated one or more conditions of his or her . . . post-release supervision in an important respect” (Executive Law § 259-i [3] [c] [iv]). At the preliminary hearing, the hearing officer is required to “review the violation charges with the alleged violator, direct the presentation of evidence concerning the alleged violation, receive the statements of witnesses and documentary evidence on behalf of the prisoner, and allow cross examination of those witnesses in attendance” (Executive Law § 259-i [3] [c] [v]). If the hearing officer finds probable cause exists, he may declare such person delinquent and a revocation hearing with respect to the charge(s) is required (Executive Law § 259-i [3] [d], [e]). At the revocation hearing the alleged *453 violator is permitted representation by counsel, the right to confront witnesses and may present witnesses and documentary evidence both in defense of the charges and on the issue of whether reincarceration is appropriate (Executive Law § 259-i [3] [f] [v]). The presiding officer at the hearing may sustain the charge only if it is supported by a “preponderance of the evidence adduced” (Executive Law § 259-i [3] [f] [viii]). In the court’s view, the above statutory scheme governing the conduct of parole revocation hearings evinces sufficient attributes of a judicial proceeding to support a cause of action for malicious prosecution. Nevertheless, claimant cannot prevail on this cause of action because he cannot establish a favorable termination of the proceeding, the absence of probable cause and actual malice.
Generally “any final termination of a criminal proceeding in favor of the accused, such that the proceeding cannot be brought again, qualifies as a favorable termination for purposes of a malicious prosecution action” (Smith-Hunter v Harvey, 95 NY2d 191, 195 [2000]). An exception to this rule exists, however, “where termination of the criminal prosecution is inconsistent with the innocence of the accused” (id. at 196). This exception includes, for example, terminations that are the product of misconduct by the accused or terminations that are the result of a compromise or mercy (Smith-Hunter, 95 NY2d at 196-197; Cantalino v Danner, 96 NY2d 391, 395 [2001]). As made clear by the Court of Appeals in Martinez v City of Schenectady, “[w]hile a plaintiff need not prove actual innocence in order to satisfy the favorable termination prong of a malicious prosecution action . . . the absence of a conviction is not itself a favorable termination” (97 NY2d at 84). The Court held in Martinez that where a conviction is reversed not because of a lack of culpability but because the evidence which formed the basis for the conviction was obtained pursuant to a faulty search warrant, no favorable termination existed for the purposes of malicious prosecution. Indeed, guilt was proven beyond a reasonable doubt and reversal was required on only procedural grounds.
Similarly, in Romero v State of New York (294 AD2d 730 [2002], lv denied 99 NY2d 503 [2002]), the indictment charging the claimant with the unlawful practice of law and petit larceny had been dismissed by the Court of Appeals on the ground that the Attorney General did not have the authority to prosecute those crimes under the Judiciary Law. In a subsequent action against the State alleging malicious prosecution, the Appellate Division, Third Department, held that the termination of the *454 criminal proceeding was not a favorable one in that the convictions were reversed solely on the basis that the Attorney General lacked authority to prosecute the claimant. Noting that a claim of legal insufficiency was previously rejected, the Court held that the termination was not a favorable one for purposes of a claim for malicious prosecution.
The facts in the instant case similarly lead to the conclusion that the grant of claimant’s petition for a writ of habeas corpus does not constitute a favorable termination. Claimant’s guilt of the underlying charge that he violated the conditions of his parole is undisputed. Claimant’s release from confinement was necessitated by a mere “procedural error, akin to a misstatement or clerical error” (People v Sparber, 10 NY3d at 472). Like the facts in Martinez and Romero, the record here fails to establish that the proceeding underlying the claimant’s cause of action for malicious prosecution was terminated in his favor.
The absence of probable cause, the third required element of a cause of action for malicious prosecution, is also lacking. The law is well settled that a pretrial determination of probable cause creates a presumption of probable cause which may be overcome only upon a showing of fraud, perjury or the withholding of evidence (see Gisondi v Town of Harrison, 72 NY2d 280 [1988]; Watson v City of Jamestown, 56 AD3d 1289 [2008]; Diederich v Nyack Hosp., 49 AD3d 491, 493 [2008], lv dismissed and denied 11 NY3d 862 [2008]; Ellsworth v City of Gloversville, 269 AD2d 654 [2000]; Gullo v Graham, 255 AD2d 975 [1998]; Brown v Roland, 215 AD2d 1000 [1995], lv dismissed 87 NY2d 861 [1995]).
As stated previously, a preliminary hearing is required unless waived, following the issuance of a warrant for retaking a person released to postrelease supervision and “[t]he standard of proof at the preliminary hearing shall be probable cause to believe that the . . . person under post-release supervision has violated one or more conditions of his or her . . . post-release supervision in an important respect” (Executive Law § 259-i [3] [c] [iv]; see also § 259-i [3] [c] [vi]; [d]). The agreed upon facts in this case include the fact that claimant was “declared delinquent” for a violation of the conditions of his parole and that “[c]laimant was incarcerated from March 28, 2007 until July 10, 2007 as a result of the execution of the Division of Parole warrant” (defendant’s exhibit A). As the declaration of delinquency may be made only upon a finding of probable cause at the preliminary hearing, or as the result of a waiver, the presumption of *455 probable cause attaches. In the instant matter, the claimant has failed to allege, let alone support, the existence of circumstances which might serve to overcome the presumption of probable cause or raise a question of fact with respect thereto. Accordingly, the third element required to maintain a cause of action for malicious prosecution is lacking.
Lastly, consideration of the law extant at the time of the administrative application of postrelease supervision in this case makes clear that the requirement of actual malice is plainly absent. As set forth in more detail below, at the time of the administrative imposition of PRS by DOCS in October 2004 (claimant’s exhibit B), the courts generally viewed PRS as an “automatic” consequence of a conviction resulting in a determinate sentence (see e.g. Matter of Deal v Goord, 8 AD3d 769, 769 [2004]). This conclusion was based upon the then-existing statutory direction contained in Penal Law § 70.45 (1) that “[e]ach determinate sentence also includes, as a part thereof, an additional period of post-release supervision” (emphasis added).[1] The claimant herein does not allege express malice on the part of the State in terms of ill will or ulterior motive. Rather, the claimant asserts malice should be inferred in this case because “the Defendant acted with a reckless or grossly negligent disregard of the claimant’s rights” (mem of law of Samiya N. Mir at 10). However, the law existing at the time of the actions complained of, as discussed later in this decision, leads the court to conclude that the proof in the record is insufficient to infer the existence of malice as a matter of law. As at least three of the four elements of a cause of action for malicious prosecution are lacking, this cause of action must be dismissed.
To the extent claimant alleges a negligence cause of action, it must be dismissed as a claim for negligence may not supplant the traditional tort remedies of false imprisonment and malicious prosecution (Simon v State of New York, 12 AD3d 171 [2004]; Russ v State Empls. Fed. Credit Union [SEFCU], 298 AD2d 791, 793 [2002]; Ellsworth v City of Gloversville, 269 AD2d 654, 656-657 [2000]; St. John v Town of Marlborough, 163 AD2d 761 [1990]). Moreover, the administrative imposition *456 of PRS by DOCS was based upon a reasonable interpretation of the law in existence at the time. Only with the benefit of extraordinary hindsight could the conduct of DOCS be considered negligent. As “[hindsight reasoning is insufficient to defeat summary judgment” this cause of action must be dismissed (Brown v Bauman, 42 AD3d 390, 392 [2007]).
With regard to the issue of immunity, inasmuch as the determination to revoke the claimant’s parole was made by the Parole Board, such determinations are judicial in nature and protected by the cloak of absolute immunity (see Executive Law § 259-i [5]; cf. Tarter v State of New York, 68 NY2d 511 [1986]). Immunity applies notwithstanding the fact that “the decision of the Parole Board revoking claimant’s parole was eventually determined to have been in error, since the action of the Parole Board was not thereby deprived of its quasi-judicial character” (Semkus v State of New York, 272 AD2d 74, 75 [2000], lv denied 95 NY2d 761 [2000]).
To the extent the conduct complained of is that of DOCS in improperly imposing the term of PRS, the result is the same. The law is settled that when official conduct involves the exercise of discretion, a government officer is not liable for the injurious consequences of his or her actions even if resulting from tortious conduct or malice (Tango v Tulevech, 61 NY2d 34, 40 [1983]; see also Lauer v City of New York, 95 NY2d 95, 115 [2000]). Immunity attaches “for those governmental actions requiring expert judgment or the exercise of discretion” (Arteaga v State of New York, 72 NY2d 212, 216 [1988]; see also Mosher-Simons v County of Allegany, 99 NY2d 214 [2002]; Swain v State of New York, 294 AD2d 956 [2002], lv denied 99 NY2d 501 [2002]). As stated by the Arteaga Court:
“Whether an action receives only qualified immunity, shielding the government except when there is bad faith or the action is taken without a reasonable basis ... or absolute immunity, where reasonableness or bad faith is irrelevant . . . , requires an analysis of the functions and duties of the particular governmental official or employee whose conduct is in issue . . . The question depends not so much on the importance of the actor’s position or its title as on the scope of the delegated discretion and whether the position entails making decisions of a judicial nature — i.e., decisions requiring the application of governing rules to particular facts, an ‘exercise of reasoned judgment which could typically produce *457 different acceptable results.’ ” (72 NY2d at 216-217, quoting Tango v Tulevech, 61 NY2d at 41.)
It has long been recognized that public officials regardless of their job title are entitled to absolute immunity for discretionary or quasi-judicial determinations involving the construction and application of governing law in the performance of their official functions (see Rottkamp v Young, 21 AD2d 373 [1964], affd for reasons stated below 15 NY2d 831 [1965]; Santangelo v State of New York, 101 AD2d 20 [1984]). In Rottkamp, for example, the Court held that a building inspector was immune from suit for his determination that the plaintiff was not entitled to a building permit. Although the denial of the permit was later determined in an article 78 proceeding to have been erroneous, the conduct of the inspector in denying the permit was discretionary and quasi-judicial in nature because it “involved the construction of the zoning ordinance and a consideration of the facts before him — an act which a building inspector must perform as part of his responsibilities” (Rottkamp v Young, 21 AD2d at 376; see also Arteaga v State of New York, supra; Miller v State of New York, 125 AD2d 853 [1986], lv denied 69 NY2d 608 [1987]).
Here, claimant’s confinement for parole violations occurred prior to the Court of Appeals decisions in Garner and Sparber in April 2008 and pursuant to what had been a long-standing practice by DOCS of implementing the statutorily mandated terms of postrelease supervision. As stated above, at the time of the administrative application of postrelease supervision in this case, the courts generally viewed postrelease supervision as an “automatic” consequence of a conviction resulting in a determinate sentence (see e.g. Matter of Deal v Goord, 8 AD3d at 769; People v Hollenbach, 307 AD2d 776 [2003], lv denied 100 NY2d 642 [2003]; People v Crump, 302 AD2d 901 [2003], lv denied 100 NY2d 537 [2003]; People v Thweatt, 300 AD2d 1100 [2002]; People v Bloom, 269 AD2d 838 [2000], lv denied 94 NY2d 945 [2000]). This conclusion was based upon the then-existing statutory direction contained in Penal Law § 70.45 (1) that “[e]ach determinate sentence also includes, as a part thereof, an additional period of post-release supervision” (emphasis added). It was not until Matter of Dreher v Goord (46 AD3d 1261 [2007]) was decided in December 2007 that the Appellate Division, Third Department, abrogated its prior holdings in Matter of Deal v Goord (supra) and Matter of Garner v New York State Dept. of Correctional Servs. (39 AD3d 1019 [2007], revd 10 NY3d *458 358 [2008]), both of which had determined that PRS was automatically included as part of a determinate sentence. In Matter of Deal, the Court had held “ ‘a period of postrelease supervision [was] automatically included’ in [petitioner’s] sentence by statute” and that in subjecting the petitioner in that case to PRS DOCS was merely “enforcing a statutorily-required part of petitioner’s sentence” (Matter of Deal v Goord, 8 AD3d at 769-770). In Garner, the Third Department found that in imposing a term of PRS upon the petitioner, who had not been advised by the court at sentencing that he would be subject to PRS, DOCS was “only enforcing, not imposing, a part of petitioner’s sentence which was automatically included by statute” (Matter of Garner, 39 AD3d at 1019). Thus, at the time of the conduct complained of by the claimant, both the plain language of the statute and the then-prevailing decisional law addressed PRS as an integral part of a determinate sentence arising by operation of law. Consistent with this premise, DOCS construed Penal Law § 70.45 (1) to apply to all individuals sentenced to a determinate sentence of imprisonment and designated such persons as subject to PRS upon their release from confinement. In interpreting the statute and determining the actions required to be taken thereunder, DOCS was acting within “the scope of discretion and responsibilities of the office and all the circumstances as they reasonably appeared at the time of the action on which liability is sought to be based” (Santangelo v State of New York, 101 AD2d at 26 [internal quotation marks and citations omitted]). That hindsight proved this discretionary determination erroneous provides no basis for defeating the privilege. In Tango v Tulevech, in which a probation officer’s refusal to relinquish custody of two children to the plaintiff was later determined to be erroneous, the Court of Appeals found that absolute immunity shielded the municipal actor from liability because “even if [the probation officer’s] ultimate determination was incorrect . . . she acted within the scope of her discretionary authority” (61 NY2d at 41-42). The Court went on to state that because “she was exercising her judgment in determining the proper conduct of her office and given the discretionary nature of her acts, the question of bad faith or malice becomes irrelevant under the rule stated in Rottkamp” (61 NY2d at 42). While DOCS obviously has no discretion to alter a sentence, its interpretation of the statute as mandating postrelease supervision for those individuals meeting the statutory criteria, and the subsequent determination to *459 administratively apply a period of postrelease supervision to all such individuals, though incorrect in hindsight, was a discretionary quasi-judicial function for which DOCS is entitled to absolute immunity. Thus, DOCS is immune from liability for its determination to impose the statutorily mandated period of PRS administratively.
This determination is amply supported by public policy considerations underlying application of the immunity doctrine. “A public officer, haunted by the specter of a lawsuit, may well be subject to the twin tendencies of procrastination and compromise to the detriment of the proper performance of his duties” (Rottkamp v Young, 21 AD2d at 376). Balancing an individual’s interest in procedural regularity (see Sparber, 10 NY3d at 471) against the public interest in fostering official conduct unhampered by the fear of retaliatory lawsuits, public policy supports application of absolute immunity in the circumstances of this case.
Moreover, even if the immunity afforded DOCS is qualified rather than absolute, the State is shielded from liability in the absence of any allegation or inference that the conduct was undertaken in bad faith or without a reasonable basis (see Arteaga v State of New York, 72 NY2d at 216; Friedman v State of New York, 67 NY2d 271 [1986]; Weiss v Fote, 7 NY2d 579 [1960]). As related above, at the time DOCS administratively imposed a period of postrelease supervision upon the claimant it acted against the background of a statute which directed that “[e]ach determinate sentence also includes, as a part thereof, an additional period of post-release supervision” (Penal Law § 70.45 [1]). Given the declaratory nature of the statutory language at the time the allegedly tortious action occurred, the statute’s lack of clarity with regard to the mechanisms by which post-release supervision was to be applied and the apparent illegality of a determinate sentence not including a period of postrelease supervision (see People ex rel. Lewis v Warden, Otis Baum Correctional Ctr., 51 AD3d 512 [2008]), DOCS applied its judgment and exercised its discretion in determining what actions were required to be taken in carrying out both the requirements of the statute and its own official duties. Under such circumstances, the type of discretionary, governmental decision-making involved in this case and the actions taken in furtherance thereof are immune from liability in a civil action for money damages.
Additionally, even if the conduct of DOCS was exclusively ministerial, no liability may be imposed because, for the reasons *460 set forth above, the conduct was not tortious (Tango v Tulevech, 61 NY2d at 40; see also Lauer v City of New York, supra). As in Collins v State of New York (Ct Cl, Dec. 31, 2007, Collins, J., UID No. 2007-015-252),[2] had the sentencing court informed the claimant of the period of postrelease supervision there would be no cause of action as the period of PRS prescribed in Penal Law § 70.45 was mandatory for individuals subject to a determinate sentence and there is no allegation that the conditions of PRS were not violated. Neither this claimant nor the movant in Collins alleged that the sentence imposed was not one subject to PRS pursuant to the Penal Law. Here, as in Collins, all that is alleged is that the claimant was made subject to PRS, which the facts indicate was consistent with the statutory requirement applicable to determinate sentencing. Under these circumstances it cannot be said that the conduct complained of was tortious or the cause in fact of the claimant’s injuries. As made clear by the Court in Sparber (10 NY3d at 469), the error was that of the sentencing judge who failed to advise the defendant of the statutorily mandated term of postrelease supervision. Had this error not occurred, the claimant would have been legally detained and imprisoned at least on the facts as presented in the motion record (cf. Vasquez v State of New York, 10 AD3d 825 [2004]; Rivera v State of New York, Ct Cl, Feb. 8, 2006, Sise, PJ., UID No. 2006-028-008, claim No. 102781). As a result, the alleged malfeasance of DOCS was not the cause in fact of the claimant’s alleged injuries as a matter of law.
Lastly, to the extent the claim alleges causes of action for a violation of the claimant’s constitutional rights, it lacks merit. It is well settled that no claim for a violation of the claimant’s federal constitutional rights is cognizable against the State in the Court of Claims (Brown v State of New York, 89 NY2d 172, 184-185 [1996]; see also Monell v New York City Dept. of Social Servs., 436 US 658 [1978]; Matter of Gable Transp., Inc. v State of New York, 29 AD3d 1125 [2006]; Welch v State of New York, 286 AD2d 496 [2001]). Likewise, a cause of action for a violation of the State Constitution may give rise to a tort cause of action only where it is necessary to ensure the full realization of the claimant’s constitutional rights (Brown v State of New York, 89 NY2d 172 [1996]; Martinez v City of Schenectady, 97 NY2d at 83-84 [2001]). Here, invocation of a constitutional tort cause of action is unnecessary as the claimant clearly had alternative *461 avenues of redress available, including habeas corpus relief which he successfully pursued (id.; Waxter v State of New York, 33 AD3d 1180 [2006]; Bullard v State of New York, 307 AD2d 676 [2003]). Thus, to the extent the claim asserts causes of action under the Federal or New York State Constitution, they too must be dismissed.
Based on the foregoing, the defendant’s motion for summary judgment is granted and the claim is dismissed. The claimant’s cross motion for summary judgment is denied.

. The quoted language from Penal Law § 70.45 was deleted by section 3 of chapter 141 of the Laws of 2008 and replaced by the following: “When a court imposes a determinate sentence it shall in each case state not only the term of imprisonment, but also an additional period of post-release supervision as determined pursuant to this article.”

. Unreported decisions from the Court of Claims are available via the Internet at www.nyscourtofclaims.state.ny.us.