## CLARK and others *vs.* THE MAYOR, &c. OF NEW-YORK.

An agreement was made between the plaintiffs and the water commissioners of the city of New-York, whereby the plaintiffs agreed to construct, according to the specifications annexed to the agreement, a certain section of the Croton Aqueduct; and it was provided that the plaintiffs should make any alterations in the form, dimensions, or materials of the work which might be directed in writing by the water commissioners, or by their chief engineer; *Held* that the water commissioners were not authorized, by the terms of the agreement, to arrest the plaintiffs in the performance of their contract, and to order the work to be stopped, under color of changing the form and dimensions of the work, without any directions in writing, for such change, having been given to the plaintiffs, either by the water commissioners, or by the chief engineer.

*Held also,* that the stopping of the work commenced by the plaintiffs in pursuance of the contract, by the engineer, under the direction of the water commissioners, was to be deemed a rescission of the contract on the part of the water commissioners, which would justify the plaintiffs in bringing their action to recover upon a *quantum meruit,* for the work actually done by them. BARCULO, J. *dissenting.*

Where a contract has been rescinded by one of the parties thereto, after the same has been in part performed by the other party, the former is not entitled to the benefit of any stipulation contained in such contract, as to the method in which the amount of compensation to be paid to the latter is to be determined; so as to prevent the latter from recovering upon a *quantum meruit* for the work done by him previous to the rescission of the contract. BARCULO, J. *dissenting.*

In such a case, the amount of compensation for the work actually done, is to be ascertained by a reference to the prices which the parties themselves have fixed, in their contract.

Principles upon which the value of work done by a party, in pursuance of a written contract which has been rescinded by the other party, is to be determined.

THIS was an action of assumpsit, tried before referees, by whom a report was made in favor of the plaintiffs for $50,959,06.

In November, 1838, a contract was entered into between the plaintiffs of the one part, and "the Water Commissioners of the city of New-York" of the other part, whereby the plaintiffs agreed to construct, *according to specifications annexed* to the contract, section 96 of the Croton aqueduct, including the receiving reservoir. It was provided in the contract that the plaintiffs should make " any alterations in the form, dimensions' or materials of said work which might be directed in writing by the said commissioners, or by the chief engineer for the time being in the employ of the said commissioners." And it was further agreed that " the said engineer should in all cases determine the amount or quantity of the several kinds of work which are to be paid for under this contract, and the amount of compensation at the rates herein provided for; and also that the said engineer shall in all cases decide every question which can or may arise relating to the execution of this contract on the part of the said contractors, and his estimate and decision shall be final and conclusive." The contract was under seal, and executed by the plaintiffs, and by Stephen Allen " on behalf of the commissioners." The form and dimensions of the reservoir were particularly stated in the specifications, which, with plans for the various structures on the reservoir, was submitted to contractors, generally, at the time of letting the contract. An estimate of the quantity of work to be done upon the section was also submitted, showing, among other things, that the *rock excavation* was estimated at 150,000 cubic yards. It was proved by Mr. Jervis, the engineer, that " *the contractors, by order of the defendants, stopped their work, and finally stopped it entirely under direction of witness, the contractors being ready and willing to complete the job on their part.*" By the terms of the contract the plaintiffs were to be paid one dollar per cubic yard for all the rock excavation. It appeared, upon the trial before the referees, that the rock excavated at the time the work was stopped, amounted to 68,678 yards; and that to complete the work according to the plans and specification would require the excavation of about 86,000 yards more. The plaintiffs proved that about 6000 yards of the rock excavation was

worth $4,10 per yard, and that the residue of the rock excavated cost about $1,20 per yard. They also proved that the remainder of the rock to complete the work could be excavated for about thirty-five cents per yard. The defendants admitted that there was a balance due to the plaintiffs of $4,159,06, including interest, estimating the rock excavated at one dollar per yard. Several questions as to the admissibility of evidence were raised upon the hearing, which are sufficiently stated in the opinion of the court.

The referees, in addition to the undisputed balance, allowed the plaintiffs the further sum of $46,800, and in a special report setting forth the grounds of such further allowance, they state that they have been governed by the contract price of one dollar for rock excavation, " taking the whole quantity originally required to be excavated together ; that they had ascertained by the proof that the plaintiffs had been stopped by the defendants in the performance of the entire work ; that they had also ascertained the relative value of the quantity excavated, and the quantity remaining not excavated, and on comparing such relative value, they found that there was due to the plaintiffs, from the defendants, for rock excavation, the said sum of $46,800."

*S. Sherwood*, for the plaintiffs.

*J. T. Brady*, for the defendants.

HARRIS, J. It is now judicially settled that the water commissioners were the agents of the defendants. (*Bailey* v. *The Mayor, &c. of the city of New-York*, 3 *Hill*, 531. *S. C. in the court for the correction of errors*, 2 *Denio*, 433. *Appleton* v. *The Water Commissioners*, 2 *Hill*, 432.) So far as the commissioners act within the scope of their powers, the defendants are liable for their acts. The contract in question was signed by Stephen Allen, chairman of the commissioners on their behalf. It may have been imperfectly executed, but it was subsequently recognized and adopted by the defendants.

They paid the plaintiffs upwards of $400,000 for work done under the contract. The plaintiffs, on the one part, and the defendants on the other, are therefore to be regarded as the contracting parties. The suit was properly brought against the defendants, and in the proper form of action. (*Randall* v. *Van Vechten*, 19 *John*. 60. *Dubois* v. *Delaware & Hudson Canal Co*. 4 *Wend*. 288.)

The next, and perhaps the most important, inquiry arising in this case is, whether the contract was rescinded by the defendants. The plaintiffs contend, and the referees have found, that it was rescinded. The defendants insist, on the other hand, that in stopping the plaintiffs' work they merely exercised the right reserved in the contract to change the form and dimensions of the work. If the contract was rescinded by the defendants, then the plaintiffs are entitled to recover, under the common counts, compensation for the work they have done. The amount of such compensation is to be ascertained by a reference to the prices which the parties themselves have fixed for the work, in their contract. For that purpose, if the contract was rescinded, the contract itself was properly received in evidence by the referees. Even if not conclusive, as to the amount to be allowed the plaintiffs for the work actually done by them, it was certainly competent to show what prices the parties themselves had fixed upon as a compensation for the work. Was, then, the contract rescinded? I agree with the referees in their conclusion that it was. Although the defendants had, in the contract, reserved to themselves the right to make such alterations " in the form, dimensions or materials of the work as might be directed in writing by the commissioners or their engineer," it cannot be contended, I think, that it was intended by this provision to authorize the defendants, whenever they should think fit, to arrest the work, under color of changing the form and dimensions of the work. No such construction of the contract seems to have been thought of when the plaintiffs were stopped in the execution of their contract. No " directions in writing" for changing the form or dimensions of the work were given to the plaintiffs, either by

the commissioners or the engineer. On the contrary, the engineer swears that the plaintiffs were "ready and willing to complete the job on their part, but that he stopped them by direction of the defendants." Besides, I think, no fair construction of the clause of the contract relied on by the defendants, would justify them in wholly arresting the plaintiffs in the performance of the contract, under the pretence of changing the form and dimensions of the work. The parties could never have intended any such thing, nor do I think the terms of the contract susceptible of such a construction. The defendants, therefore, when the work was entirely stopped by their engineer under their direction, must be deemed to have rescinded the contract, and the plaintiffs were right in bringing their action to recover upon the *quantum meruit* for the work they had done under the contract.

The next question to be considered is whether the referees have erred in the basis upon which they have determined the value of the work done by the plaintiffs. They have assumed that the entire rock excavation to complete the work according to the specification annexed to the contract was worth the contract price of one dollar per cubic yard. They have also found that it was worth, to excavate the rock which had been removed when the work was stopped, the sum of $46,800 over and above the price of one dollar per yard ; and that it would be worth, to excavate the rock remaining when the work was stopped, less than one dollar per yard by the like sum of $46,800. So that assuming the whole work to be worth the price stipulated in the contract, and comparing the cost of the rock excavated with what it would cost to complete the excavation, the value of the work done exceeded the amount which the defendants had allowed for the work, to the amount stated. I cannot see that the referees have violated any rule of law in adopting this principle as the basis of their report. On the other hand, I think they have adopted the only correct mode of ascertaining the amount which the plaintiffs were entitled to recover. If a portion of the excavation was worth $4 per yard, and another portion was worth only thirty-five cents per yard, and the aver-

age of the whole would be worth one dollar per yard, and if, after the plaintiffs had excavated that portion which was worth more than the average price, and before that which was worth less had been excavated, the work was stopped by the defendants, I see no reason why the plaintiffs should not recover the comparative value of the work done by them. To insist that, because the price is fixed in the contract at the same sum per cubic yard for all the rock excavation, no regard is to be had to the relative cost of the work done and that to be done, would be manifestly unjust. According to the facts, as found by the referees, the plaintiffs have lost upon that portion of their contract which they have executed, estimating it at the contract price of one dollar per cubic yard, the sum of $46,800; and they would have made a profit upon that portion of their contract which remained to be executed when the work was suspended, equal to the amount of their loss upon the work done. The mere statement of the facts, as they are found to exist, is sufficient to justify the referees in adopting the rule upon which they have proceeded.

But it is insisted by the counsel for the defendants, that the "*final account*" made by the engineer is conclusive upon the plaintiffs as to the quantity of work done, and also as to the compensation to be paid therefor. It is true that the provisions of the contract in this respect are very broad, and so long as the contract remained unrescinded, perhaps the plaintiffs could not have withdrawn from the decision of the engineer any question arising under the contract. They had agreed that " the engineer should in all cases determine the amount or quantity of the several kinds of work which were to be paid for under the contract, and the amount of compensation at the rates therein provided for, and also that *he should in all cases decide* every question which could or might arise relating to the execution of the contract on the part of the contractors; and his estimate and decision should be final and conclusive." Thus it will be seen that so long as the contract remained in force, every question arising under it was to be determined by the engineer. From his decision there was to be no appeal. If, there-

Clark v. The Mayor, &c. of New-York.

fore, the contract had not been rescinded, and the plaintiffs had brought their action upon the contract, I think they would have been bound by the final estimate and return made by the engineer. But the contract having been rescinded by the act of the defendants, they are not entitled to the benefit of any stipulation it contains, for the purpose of depriving the plaintiffs of a just compensation for the work done by them before it was rescinded. The decisions of the engineer were no longer binding upon the plaintiffs. They became entitled to recover of the defendants the value of the labor they had expended upon the work, and it was only important to refer to the contract for the purpose of ascertaining what prices the parties had themselves mutually fixed upon the work. It belonged exclusively to the referees, to determine from the evidence before them, uncontrolled by any estimate or decision of the engineer, what compensation the plaintiffs were entitled to recover for the work they had done. (*Delaware and Hudson Canal Company* v. *Dubois*, 15 *Wend.* 87.)

The action having therefore been properly brought by the plaintiffs upon a *quantum meruit*, to recover for the value of their work, and no error having been committed by the referees in the principles upon which they have proceeded in estimating the amount due to the plaintiffs, their report should be confirmed, unless they have erred in the admission or rejection of evidence. The first evidence objected to by the defendants was the contract itself. The ground of objection seems to have been that it was not in fact a contract between the plaintiffs and defendants, but between the plaintiffs and the water commissioners, and therefore that it was inadmissible as evidence against the defendants. Upon this point it is enough to say that though the contract may have been imperfectly executed, yet the defendants have recognized and acted upon it as their contract, and so far as it has been executed, they are bound by its provisions and terms. It was therefore properly admitted in evidence for the purpose for which it was offered. Several objections were made to questions put to witnesses examined before the referees. All these objections

were founded upon the assumption, by the counsel for the defendants, that the return and decision of the engineer was made by the contract conclusive upon the parties. But we have already seen that this position cannot be sustained ; and the referees therefore were right in overruling these objections.

. The only other objections urged by the counsel for the defendants were to the extracts from the report of the engineer to the water commissioners and the report of the water commissioners to the defendants. In these reports it is stated that " by *stopping* the rock excavation the defendants had saved $75,000." I think this evidence was competent, as tending to establish two positions necessary to be proved to entitle the plaintiffs to recover; first, that the defendants recognized and ratified the contract as their own ; and secondly, that the contract was in fact rescinded by their agents, with their knowledge and approbation.

I am of opinion therefore that the report of the referees ought to be confirmed.

WATSON, J. concurred.

BARCULO, J. *dissenting* The referees have reported due to the plaintiff the sum of $50,959,06. Of this sum $4,159,06 is an undisputed balance of account for work done, as to which I see no reason why the plaintiffs are not entitled to recover. As to the remaining $46,800 the report stands upon a different ground, which requires a careful examination. It is not very apparent, either from the case or the reports, by what calculation the referees arrived at this amount. In their special report they state that their conclusion is based upon " the following calculation and items ;" but no very intelligible calculation or items are set forth, by which we can ascertain how far the report is founded upon work done, or upon damages for breach of contract. They say " that by the contract between the parties the price of the rock excavation was fixed at one dollar per cubic yard, which we have been governed by, taking the whole quantity originally required to be excavated together ; that we have ascertained from the proof that the plaintiffs have been

stopped by the defendants in the performance of the entire work. And we have also ascertained the relative value of the quantity excavated and of the quantity remaining not excavated, and on comparing such relative value we find that there is due from the defendants to the plaintiffs for the portion excavated $46,800." This specification is to my mind any thing but clear and specific. If the referees had stated the amount of rock excavation which they found to have been done by the plaintiffs, and its value, as well as the amount not done and its value, we might see how far their *comparison of such relative value* would legally lead to the result. But as it is, we must ascertain from the facts of the case whether any such result could be arrived at, consistent with the rules of law.

The case shows that 66,000 cubic yards of rock excavation were completed, for which the plaintiffs were paid at the rate of one dollar per yard. If, therefore, the report is *for work done*, it must be founded upon an estimate of a higher price for that work per yard. The proof by the plaintiff's witnesses shows that the rock excavation costs the plaintiff from $1,10 to $4,10 per yard. The same proof also shows that the residue of the 150,000 yards of rock excavation which the plaintiffs claim was originally intended to be done would, the most of it, have been done at an expense of about 35 cents per yard. It also appears that a computation founded upon the real value of the work done, without regard to the contract price, or upon the loss of profit arising from the non-performance of the remaining 84,000 yards, would produce an amount nearly corresponding with the amount found by the referees. It becomes necessary, therefore, to inquire whether a recovery upon either of these grounds can stand.

1. It is quite clear that the plaintiffs cannot recover in this action the damages resulting from the non-performance of the contract, by the defendants' preventing them from excavating the whole amount of 150,000 cubic yards of rock. Although there is a special count claiming such damages, it cannot be seriously contended, that a contract under seal of the plaintiffs

and one of the water commissioners, can be the basis of a *special count in assumpsit* against the corporation.

2. The more important question is, whether the recovery can be had on the common counts. It is an undoubted rule that where a special agreement has been performed, an action for work will lie upon the *quantum meruit,* and the contract need only be referred to for the purpose of regulating the price. (*Dubois* v. *The Delaware and Hudson Canal Co.* 4 *Wend.* 285. 12 *Id.* 334. 15 *Id.* 87.) In case also of the *rescinding* the contract by the defendant, the plaintiff may disregard it and recover on the common counts. In all such cases the *quantum meruit* count is sufficient. Now in this case the contract is either *performed* or *rescinded* by the defendants' preventing the plaintiffs from finishing the work. In either case the plaintiffs are entitled to recover if their proof is sufficient. On the ground of *performance* of the contract, the plaintiffs must fail; because the contract must govern as to price; and the contract prices have been *paid.*

Let us next see how the case would stand assuming that the stoppage of the work by the defendants amounts to a rescission of the agreement. In that case the plaintiffs could, at most, but disregard the contract and go purely for the *quantum meruit.* This difficulty then arises: the plaintiffs claim to recover according to the contract prices for all the work *excepting the rock excavation,* and as to that, seek to recover from $1,20 to $4 per cubic yard, while the contract gives but $1. I see no principle which will permit this. It seems to me that if the plaintiff elects to consider the contract rescinded, he must treat it as rescinded *in toto.* He must therefore rely upon his proof of the value of *all his work.* He cannot be permitted to avail himself of the contract and receive its prices for most of the work, and select a single item, which happens to have been unexpectedly expensive, and claim to recover the full value for that particular portion of the work. It may very well be that the contract prices, as *a whole,* afford a fair compensation—as much or more than the true value of the services could be proved; and yet that, in some branches of the labor, the con-

tract price would be quite inadequate. There must necessarily be some degree of uncertainty in all estimates of such kinds of work. On some, the contractors will realize large profits, and in others, sustain heavy losses. But it may be laid down as a safe principle of law, that they must adhere to the contract throughout, or else abandon it entirely. This seems to me to be an insuperable objection to the recovery of the $46,800 for labor performed.

Hitherto it has been assumed that the contract entitled the plaintiffs to excavate 150,000 cubic yards of rock, and that the defendants improperly stopped them, when less than half that amount had been completed. But after the most careful examination, I am unable to give that interpretation to the agreement between the plaintiffs and the water commissioners. By the terms of the contract itself the plaintiffs agree to perform all the labor and furnish all the materials necessary to construct and finish, in every respect, in the most substantial and workmanlike manner, section ninety-six of the Croton aqueduct, including the receiving reservoir, according to the *specification* thereto annexed. The specification provides that the receiving reservoir should be divided into two sections, the northern and southern. "The northern section to have twenty feet depth of water, and the southern twenty-five feet depth of water." Then follows the estimate of work entitled "approximate quantities of the principal items on section No. 96, including receiving reservoir," which was exhibited to all contractors who wished to examine it. In this estimate the quantity of rock excavation is put down at 150,000 cubic yards.

The fair construction of the contract, in connection with the specifications and estimates, is this; the plaintiffs contracted to do the job, having been furnished with a general outline of the nature and extent of the work, and an estimate of the several kinds and qualities of work, but neither party understood that any *specific* or *certain* amount of any of the kinds of work was to be done or furnished. Neither party was bound by the estimates, unless those quantities were necessary in the progress of the work. From the nature of the undertaking it was im-

possible to foresee how much of the excavation would be *rock,* and how much *earth.* That such must have been the understanding of the parties is obvious from the amount of work done concerning which there is no controversy, compared with the estimates. Thus the amount of other kinds of excavation was estimated at 400,000 cubic yards—the quantity performed was 287,650. Estimated amount of embankment 500,000 cubic yards—performed, 249,860. Protection wall estimate 38,000 cubic yards—performed 29,627. And so of the rock excavation estimate, 150,000 cubic yards—performed 66,026.

There is moreover a paragraph in the contract itself which would seem to set this matter at rest. It is as follows: "And the said contractors hereby agree that they will perform the work under this contract as above specified; but any alterations in the form, dimensions or materials of said work, which may be directed in writing by the said commissioners or the said engineer, shall be made by said contractors as directed and required; and to prevent all disputes, it is hereby agreed, that the said engineer shall in all cases determine the amount or quantity of the several kinds of work which are to be paid for under this contract, and the amount of compensation at the rates herein provided for; and also that the said engineer shall in all cases decide every question which can or may arise relating to the execution of this contract, on the part of the said contractors, and his estimate and decision shall be final and conclusive." As I understand this provision, the parties, at the time of contracting, contemplated the possibility of a change in *the form or dimensions* of the work, and the plaintiffs agreed to make the same as required; and to bind themselves more effectually, they agreed that the engineer should, in all cases, determine *the amount or quantity of the several kinds of work which were to be paid for under the contract.* That which was thus contemplated has taken place. The commissioners have changed the *form* and *dimensions* of the work, by not excavating to so great a depth as originally designed. The engineer has determined the amount of rock excavation to be paid for under the contract, to be 66,000 cubic yards. For this

the plaintiffs have received $66,000, the price fixed by the contract as well as by the determination of the engineer. I am wholly unable to see how they can recover any thing more. I am not aware of any principle which will permit them to recover more than the contract price for the work actually done, nor to recover any thing for the work not done, and which they claim was intended to be done.

It seems to me that there has been no breach or rescission of this contract, but that it has been performed by the respective parties, according to its true intent and meaning. Some of the exceptions to the decision of the referees, in admitting testimony, I think are well taken, particularly those which relate to the admission of the reports of the engineer and water commissioners. But the view I have taken of the main question renders it unnecessary to examine these more minutely.

My conclusion is, that this report cannot stand as to the $46,800. (1.) Because no recovery can be had for the rock excavation beyond the contract price of one dollar per cubic yard, for the work done. (2.) Because, admitting the contract to have been abandoned or rescinded, the proof will not sustain the count on a *quantum meruit ;* as it is confined to the value of the rock excavation, and does not extend to the value of the whole work. (3.) The action will not lie against the defendants on the special count for breach of contract, because it was not made by them, but was made by one of the water commissioners, under seal.

Report of referees confirmed.

*Reversed 4 Comst 338.*