*Uviles v. City of New York*

# In the
# United States Court of Appeals
## FOR THE SECOND CIRCUIT

---

AUGUST TERM 2023
No. 23-903

**JOEL UVILES,**
*Plaintiff-Appellant,*

v.

**CITY OF NEW YORK,**
*Defendant-Appellee,*

**ANTHONY J. ANNUCCI, Acting Commissioner for the New York State Department of Corrections and Community Supervision, in his official capacity,**
*Defendant.*[*]

---

On Appeal from the United States District Court
for the Eastern District of New York

---

ARGUED: APRIL 10, 2024
DECIDED: FEBRUARY 26, 2025

---

Before:      WALKER and MENASHI, *Circuit Judges,* and CHOUDHURY, *Judge.*[†]

---

[*] The Clerk of Court is directed to amend the caption as set forth above.

[†] Judge Nusrat J. Choudhury of the United States District Court for the Eastern District of New York, sitting by designation.

Joel Uviles sued the City of New York under 42 U.S.C. § 1983, alleging that the New York City Department of Corrections ("DOC") unlawfully detained him pursuant to a state parole warrant. Uviles had been on state parole when he was arrested on new charges. At the time, New York law required that an alleged parole violator be provided with a preliminary hearing within fifteen days of the execution of the parole warrant. Uviles never received a hearing. After twenty-one days of detention, Uviles posted bail on the new charges but the DOC continued to detain him on the basis of the parole warrant for another seventeen days, at which point the state board of parole lifted the warrant.

Uviles argues that his detention pursuant to the parole warrant was unlawful because (1) a copy of the parole warrant was never delivered to the prison as state law required, and (2) the failure to provide a timely preliminary hearing rendered the warrant facially invalid and obligated the DOC to release him. We conclude that the City lawfully detained Uviles. First, the delivery of the parole warrant was proper because a copy was delivered to the New York City Police Department and the criminal court, and the warrant information was transmitted to the DOC. Second, the parole warrant was facially valid even after the fifteen-day hearing deadline expired. We affirm the judgment of the district court.

Judge Choudhury concurs in part and in the judgment in a separate opinion.

TRISTAN M. ELLIS (David B. Shanies, *on the brief*), Shanies Law Office PLLC, New York, NY, *for Plaintiff-Appellant*.

ELINA DRUKER (Richard Dearing and Ingrid R. Gustafson, *on the brief*), *for* Sylvia O. Hinds-Radix, Corporation Counsel of the City of New York, New York, NY, *for Defendant-Appellee*.

MENASHI, *Circuit Judge*:

Plaintiff-Appellant Joel Uviles sued the City of New York under 42 U.S.C. § 1983, alleging that the City violated his rights under the Fourth and Fourteenth Amendments by detaining him without a lawful basis. Uviles was arrested while he was on parole for a prior state conviction. He was transferred to the custody of the New York City Department of Corrections ("DOC") and detained at Rikers Island. The New York State Department of Corrections and Community Supervision ("DOCCS") issued a parole warrant ordering that Uviles "be retaken and placed in detention to await the action of the New York State Department of Corrections and Community Supervision or a court of competent jurisdiction." App'x 397.

At the time of Uviles's detention, New York law required that an alleged parole violator be given a preliminary probable cause hearing within fifteen days of the execution of a parole warrant. Uviles never received a hearing. After twenty-one days of detention, Uviles posted bail on the new charges. The City continued to detain him solely on the basis of the parole warrant for another seventeen days until the state board of parole lifted the warrant.

3

Uviles argues that his detention pursuant to the parole warrant for those seventeen days was unlawful for two reasons. First, a copy of the parole warrant was never delivered to Rikers Island as New York state law required. Second, the failure of the DOCCS to provide a timely preliminary hearing rendered the warrant facially invalid as a matter of state law and obligated the City to release him. Uviles alleges that the City detained him pursuant to an official municipal policy to enforce an outstanding parole warrant until the DOCCS lifts the warrant or a court orders release.

We conclude that Uviles's claim fails because the City lawfully detained him. First, the parole warrant was properly delivered. A copy of the warrant was delivered to the New York City Police Department ("NYPD") and the criminal court, and the warrant information was electronically transmitted to the DOC. Second, the parole warrant remained facially valid even after the fifteen-day deadline for the preliminary hearing expired. Accordingly, the City detained Uviles pursuant to a lawful policy. We affirm the judgment of the district court.

## BACKGROUND

On May 22, 2018, the NYPD arrested Uviles. He was arraigned on felony and misdemeanor charges the next day and transferred to the custody of the DOC at Rikers Island. On May 25, the criminal court dismissed the felony charges and set bail at $2,500 cash.[1] At the time of his arrest, Uviles was on parole for a prior state conviction. His arrest while on parole prompted the DOCCS to issue a parole warrant ordering that Uviles "be retaken and placed in detention to await the action of the New York State Department of Corrections and

---

[1] The remaining misdemeanor charges were dismissed a few months later.

Community Supervision or a court of competent jurisdiction." App'x 397.

Uviles's parole officer was on vacation when he was arrested. By June 6, following her return from vacation, she realized that Uviles had not been timely served with a notice of violation and hearing as state law required. The parole officer communicated with a supervisor who, on June 7, submitted a form requesting that a member of the parole board lift the parole warrant in accordance with an internal directive of the DOCCS. On June 10, the parole officer told Uviles that he would likely be released in a few days.

On June 12, Uviles posted bail on the new charges. But the City continued to detain him on the basis of the parole warrant because the board of parole had not yet lifted the warrant. On June 26, the board of parole informed the parole officer that the submitted paperwork was incomplete. The parole officer submitted the missing paperwork later that day. On June 29—seventeen days after Uviles posted bail—the board of parole lifted the warrant. The City released Uviles that night.

## STANDARD OF REVIEW

"We review the district court's grant of summary judgment de novo," and in doing so "we resolve all ambiguities and draw all permissible inferences in favor of the party against whom summary judgment is sought." *Friend v. Gasparino*, 61 F.4th 77, 84 (2d Cir. 2023) (internal quotation marks omitted). "Summary judgment is warranted only upon a showing 'that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law.'" *Johnson v. Killian*, 680 F.3d 234, 236 (2d Cir. 2012) (quoting Fed. R. Civ. P. 56(a)).

## DISCUSSION

"Under New York's bipartite corrections system, individuals ultimately subject to State custody may initially be confined in county jails, to be transferred to State correctional facilities after conviction and sentencing." *Ayers v. Coughlin*, 72 N.Y.2d 346, 349 (1988). State parolees are under the supervision of the DOCCS. However, the DOCCS may issue a parole warrant—a "hold"—that authorizes the local municipality to detain an alleged parole violator until his final parole revocation hearing.

New York Executive Law § 259-i governs parole revocation procedures. At the time of Uviles's detention,[2] § 259-i provided that if a parole officer has "reasonable cause to believe" that a parolee "has violated one or more conditions of his … parole," the parole officer must report the violation "to a member of the board [of parole], or to any officer … designated by the board [of parole], and thereupon a warrant may be issued for the retaking of such person and for his temporary detention." N.Y. Exec. L. § 259-i(3)(a)(i) (effective July 25, 2017). The "officer to whom such warrant shall be delivered is authorized and required to execute such warrant by taking such person and having him detained." *Id.* § 259-i(3)(a)(ii).

Section 259-i did not explain how a parole warrant may be lifted, but the state regulations provided that before the preliminary hearing a DOCCS officer "may report in writing such circumstances concerning the warrant as are relevant to a board member who may

---

[2] Section 259-i was amended in 2021. *See* L. 2021, ch. 427, §§ 4-8 (Sept. 17, 2021). The parties agree that the versions of the statute and regulations that were in force at the time of Uviles's 2018 detention govern this appeal. Accordingly, the citations to the statute and its accompanying regulations in this opinion reference those versions.

then vacate the warrant." 9 N.Y.C.C.R.R. § 8004.2(g) (effective July 28, 1993).[3]

Section 259-i required that an alleged parole violator receive, within three days of the execution of the warrant, notice of the alleged violation and of a hearing. N.Y. Exec. L. § 259-i(3)(c)(iii). The statute required that a preliminary probable cause hearing be held within fifteen days of the execution of the warrant unless the parolee waived the hearing, *id.* § 259-i(3)(c)(i), (iv), and that a final parole revocation hearing be held within ninety days of the preliminary hearing, *id.* § 259-i(3)(f)(i).[4] The statute did not specify the consequences of a

---

[3] The regulations also provided that, after the preliminary hearing, "[w]here a final revocation hearing has not yet commenced … delinquency may be cancelled and the warrant vacated by three members of the board or the administrative law judge." 9 N.Y.C.C.R.R. § 8004.3(e)(1) (effective July 12, 2004). Section 259-i explained that the detention of an alleged parole violator "may be further regulated by rules and regulations" of the DOCCS "not inconsistent with this article." N.Y. Exec. L. § 259-i(3)(a)(i).

[4] The City observes that a warrant's execution date is often contested and is not necessarily the same date as that on which the warrant is issued or served or on which the parolee is taken into custody on other charges. *Compare People ex rel. Mitchell v. Warden*, No. 251205, 2015 WL 7160133, at *4 (N.Y. Sup. Ct. Nov. 12, 2015) ("[L]odging of a parole warrant against a parolee already detained on an unrelated basis is not synonymous with execution. Rather, execution is only effected when the parole warrant serves as the sole or exclusive basis for such detention."), *with People ex rel. Morant v. Warden*, 35 A.D.3d 208, 209 (1st Dep't 2006) ("[T]he parole revocation warrant was executed not on the date of issuance … but rather on the date the warrant was served on petitioner at the correctional facility where he was incarcerated for related criminal charges."). Because we conclude that the City did not unlawfully detain Uviles, we need not determine the date of execution of his parole warrant. As Uviles recognizes, that date "merely goes to the extent of Mr. Uviles's overdetention," that is, "whether he was overdetained for 17 days or two." Reply Br. 25.

failure to provide a timely notice or hearing. An internal directive of the DOCCS provided that if the DOCCS failed to provide a timely notice or hearing, the parole officer "must immediately prepare a Supplementary Violation of Release Report indicating the nature of the due process violation and recommending cancellation of delinquency. … Should the Board cancel delinquency, the warrant is to be lifted immediately." App'x 424.[5] The directive otherwise stated that "[p]arole warrants do not expire" and "remain in force until cancelled by members of the Board of Parole or completion of the revocation process." App'x 420.

Uviles argues that the City violated his right to be secure against unreasonable seizures under the Fourth and Fourteenth Amendments by detaining him without a lawful basis. He argues that his detention was unlawful for two reasons. First, his parole warrant was never delivered to Rikers Island as state law required. Second, the DOCCS failed to hold a probable cause hearing within fifteen days, which he argues rendered the parole warrant facially invalid and obligated the DOC to release him.

To prevail on a § 1983 claim against a municipality, "a plaintiff must prove that action pursuant to official municipal policy caused the alleged constitutional injury." *Hu v. City of New York*, 927 F.3d 81, 104 (2d Cir. 2019) (quoting *Cash v. City of Erie*, 654 F.3d 324, 333 (2d

_____

[5] The record indicates that a directive was in effect at the time of Uviles's detention, *see* App'x 208, but the record includes only the version of the directive issued on August 6, 2018, shortly after Uviles's release on June 29, 2018. The parties both reference that version of the directive in describing the rules applicable to Uviles's situation. Uviles observes that under the "internal regulations" of the DOCCS, "a Parole Board member's approval was required before [the] DOCCS could vacate a warrant." Appellant's Br. 9.

8

Cir. 2011)). When a plaintiff "seek[s] to establish municipal liability on the theory that a facially lawful municipal action" resulted in a violation of his constitutional rights, he "must demonstrate that the municipal action was taken with deliberate indifference as to its known or obvious consequences." *Newton v. City of New York*, 779 F.3d 140, 156 (2d Cir. 2015) (quoting *Bd. of Cnty. Comm'rs of Bryan Cnty. v. Brown*, 520 U.S. 397, 407 (1997)); *see also City of Oklahoma City v. Tuttle*, 471 U.S. 808, 824 (1985) ("[W]here the policy relied upon is not itself unconstitutional, considerably more proof than the single incident will be necessary in every case to establish both the requisite fault on the part of the municipality, and the causal connection between the 'policy' and the constitutional deprivation.") (footnote omitted). To establish deliberate indifference, a plaintiff must show that the municipality was "aware of constitutional injury, or the risk of constitutional injury, but failed to take appropriate action to prevent or sanction violations of constitutional rights." *Jones v. Town of East Haven*, 691 F.3d 72, 81 (2d Cir. 2012).

## I

Uviles argues that his detention was unlawful because the warrant was never delivered to Rikers Island. We conclude that the delivery of the warrant complied with § 259-i because a copy of the warrant was delivered to the NYPD and the criminal court, and the warrant information was transmitted electronically to the DOC with Uviles's transfer to DOC custody.

Section 259-i provided that a parole warrant "shall constitute sufficient authority to the superintendent or other person in charge of any jail, penitentiary, lockup or detention pen *to whom it is delivered* to hold in temporary detention the person named therein." N.Y. Exec. L. § 259-i(3)(a)(i) (emphasis added); *see also id.* § 259-i(3)(a)(ii) ("Any

9

such officer to whom such warrant shall be delivered is authorized and required to execute such warrant by taking such person and having him detained as provided in this paragraph.").

A copy of the parole warrant was delivered to the NYPD and the criminal court. The record does not show that a copy of the warrant was delivered to Rikers Island. However, the principal information in the warrant was transmitted electronically through the DOC's computer system, which tracks the status of detention holds. *See* App'x 402.[6]

Uviles argues that pursuant to § 259-i(3)(a) he could not be detained unless Rikers Island received a copy of the warrant. We disagree. First, the regulations provided that the warrant "may be executed by any parole officer, any officer authorized to serve criminal process or any peace officer" and that "[s]uch officer" was "authorized to take such person and have him detained in any jail, penitentiary, lockup or detention pen." 9 N.Y.C.C.R.R. § 8004.2(e)-(f). The delivery of the warrant to the NYPD and the criminal court, therefore, would have allowed the officers executing the warrant to have Uviles detained. Second, even if § 259-i(3)(a) required a separate delivery to the prison, the electronic transmittal of the warrant information satisfied that requirement.

---

[6] The information included the warrant number, the status of the warrant as a New York State parole warrant, that Uviles was charged with a violation of parole, the date on which the warrant was lodged, and identifying information for Uviles. Uviles does not argue, and the record does not indicate, that the information electronically transmitted was inaccurate.

## II

Uviles argues that the City unlawfully detained him on the basis of the parole warrant after the fifteen-day deadline for a preliminary hearing expired.[7] Uviles alleges—and the record indicates—that the City detained him pursuant to an official policy to enforce parole warrants until the DOCCS lifts the warrant or a court orders release.[8] Uviles contends that the detention was unauthorized because—as a matter of state law—the parole warrant became facially invalid after the fifteen-day hearing deadline passed. In making this argument, Uviles relies on *McDay v. Travis*, 303 F. App'x 928 (2d Cir. 2008), in which we said that if the preliminary and final hearing requirements "are not timely met, the parole warrant is rendered void, and the prisoner is entitled to be released." *Id.* at 929. According to Uviles, he has a viable claim under § 1983 for a violation of his rights under the Fourth and Fourteenth Amendment rights because he was detained based on a warrant that was facially invalid under state law. *Cf. Sowell v. Annucci*, No. 22-CV-6538, 2023 WL 4189725, at *7 (S.D.N.Y. June 26, 2023) ("Because Plaintiff alleged no facts suggesting that the parole warrants were facially invalid, he failed to

---

[7] Uviles's appellate brief argues that the warrant became facially invalid because the DOCCS failed to provide the three-day notice and the fifteen-day preliminary hearing. At oral argument, however, Uviles's counsel stated that his claim relies only on the failure to meet the hearing deadline. *See* Oral Argument Audio Recording at 00:30.

[8] *See, e.g.*, App'x 426 (DOC General Office Manual) ("A Senior Parole Officer issues a New York State Parole Warrant when the officer concludes that a parolee has violated the conditions of his or her release. This warrant authorizes DOC to hold a parolee until a parole hearing can be conducted. … A parole warrant is a legal hold. In most instances, the inmate may not be discharged until the parole warrant is resolved.").

11

state a claim for false imprisonment for his resulting detentions based on those warrants.").

We conclude that the district court did not err in granting summary judgment to the City on Uviles's § 1983 claim. The parole warrant remained facially valid—and the City was required to honor it—until it was lifted by the state board of parole or by a court. The City therefore detained Uviles lawfully pursuant to a lawful policy.

**A**

Under New York law at the time of Uviles's detention, a parole warrant remained valid—and the City was required to enforce it—until the state board of parole lifted the warrant or a court ordered release. The state "retain[ed] legal custody" of alleged parole violators while the City had only "physical custody" of them. *Broome County v. State of New York*, 547 N.Y.S.2d 461, 461 (3d Dep't 1989) (citing *Nassau County v. Cuomo*, 69 N.Y.2d 737, 740 (1987)); *see* N.Y. Exec. L. § 259-i(2)(b) (providing that parolees "shall … be in the legal custody of the department until expiration of the maximum term or period of sentence"). For that reason, the City lacked the authority to alter the status of someone detained pursuant to a parole warrant or to release him without authorization from the state or from a court. *Cf.* N.Y. Corr. L. § 500-c(4) (effective Aug. 21, 2017) ("The chief administrative officer shall receive and safely keep in the county jail of his county each person lawfully committed to his custody … [and] shall [not] … without lawful authority, let any such person out of jail."); *Bell v. Adams*, No. 151715, 2022 WL 2287289, at *13 (N.Y. Sup. Ct. June 23, 2022) (holding that § 500-c "remove[s] any City DOC discretion in taking individuals into custody: once an individual has been lawfully ordered into City DOC's custody by the Criminal Court, it has no choice but to detain said individual").

12

The relevant statutory and regulatory framework indicated that a parole warrant remained valid with respect to the City until it was vacated by the parole board or by a court. Section 259-i permitted "any parole officer or any officer authorized to serve criminal process or any peace officer, who is acting pursuant to his special duties, or police officer" to issue a parole warrant. N.Y. Exec. L. § 259-i(3)(a)(ii). But the regulations authorized only a member of the board of parole to vacate a parole warrant. *See* 9 N.Y.C.R.R. § 8004.2(g) ("At any time after the issuance of a warrant for retaking and temporary detention, and before the preliminary hearing or waiver thereof, an officer of the division assigned to field service and holding a title above senior parole officer … may report in writing such circumstances concerning the warrant as are relevant to a board member who may then vacate the warrant."); *see also id.* § 8004.3 (providing that after a preliminary hearing and "[w]here a final revocation hearing has not yet commenced … delinquency may be cancelled and the warrant vacated by three members of the board or the administrative law judge, who shall state their reasons in writing for the cancellation").

The text of Uviles's parole warrant described this allocation of legal authority. The warrant "order[ed] that said person be retaken and placed in detention *to await the action of the New York State Department of Corrections and Community Supervision or a court of competent jurisdiction* and for so doing, this shall be your sufficient warrant." App'x 397 (emphasis added). The DOCCS's internal directive applied the same state law principles. The directive stated that "[p]arole warrants do not expire. They remain in force until cancelled by members of the Board of Parole or completion of the revocation process." *Id.* at 420. The directive also provided that if the DOCCS violated a parolee's due process rights by failing to provide

timely notice or a timely hearing, the parole officer "must immediately prepare a Supplementary Violation of Release Report indicating the nature of the due process violation and recommending cancellation of delinquency" and submit it "to the Board for its review and decision. Should the Board cancel delinquency, the warrant is to be lifted immediately." *Id.* at 424. The directive thus indicated that the warrant remained in force until the board of parole lifted it or a court ordered release. State law afforded the City no discretion but to honor the parole warrant until such an invalidation occurred.[9]

**B**

Uviles argues that *McDay* requires us to hold that his detention was unlawful. In *McDay*, we said that under state law, if § 259-i's preliminary and final hearing "requirements are not timely met, the parole warrant is rendered void, and the prisoner is entitled to be released." 303 F. App'x at 929. We suggested that the City could be liable under § 1983 for the state's failure to provide a timely hearing because the City's policy to honor an outstanding parole warrant until the DOCCS lifts the warrant was in "apparent tension with state law" and "it appears that any parole warrant in the City's possession

---

[9] For this reason, Uviles's reliance on *Hernandez v. United States*, 939 F.3d 191 (2d Cir. 2019), is misplaced. In *Hernandez*, we decided that the City plausibly violated the Fourth Amendment by detaining the plaintiff pursuant to a federal immigration detainer even after he "told multiple DOC employees that he was a U.S. citizen, and the City could have easily verified his citizenship." *Id.* at 208. We explained that the City could be liable under § 1983 for "blindly honoring federal immigration detainers" because "the honoring of detainers is not mandatory" and "the City had an independent obligation to verify Hernandez's citizenship in the circumstances [t]here." *Id.* at 206-08 & n.11 (internal quotation marks and alteration omitted). The City lacked such authority in this case.

ceased to be 'facially valid' … after plaintiff was not afforded a probable cause hearing within fifteen days of its issuance." *Id.* at 931.

*McDay* does not govern this appeal. *McDay* was decided by a nonprecedential summary order. *See* 2d Cir. Local R. 32.1.1. Of course, as Uviles notes, we issue summary orders "in cases in which a precedential opinion would serve no jurisprudential purpose because the result is dictated by pre-existing precedent." *United States v. Montague*, 67 F.4th 520, 535 n.4 (2d Cir. 2023) (quoting 2d Cir. Order of June 26, 2007, adopting 2d Cir. Local R. 32.1, at 3), *judgment vacated on other grounds*, 144 S. Ct. 2654 (2024). For that reason, summary orders ostensibly reflect "applications of established law." *Id.* (quoting *United States v. Kirilyuk*, 29 F.4th 1128, 1148 (9th Cir. 2022) (Bress, J., dissenting)). And it is also true that "our 'denying summary orders precedential effect does not mean that the court considers itself free to rule differently in similar cases.'" *United States v. Payne*, 591 F.3d 46, 58 (2d Cir. 2010) (alteration omitted) (quoting 2d Cir. Order of June 26, 2007, at 3).

We depart from *McDay*, however, for two reasons. First, its discussion of the applicable law was qualified. The court explained that the City's policy was in "*apparent* tension with state law" and that "it *appears* that any parole warrant in the City's possession ceased to be 'facially valid' … after plaintiff was not afforded a probable cause hearing within fifteen days." *McDay*, 303 F. App'x at 931 (emphasis added). The court exercised that caution because the record before it was incomplete. The case had been decided on a summary judgment motion filed before any discovery, and the record did not include the

15

parole warrant or the DOCCS's applicable policies and regulations.[10] The court observed not only that "the parole warrant at issue is not in the record before us" but also that "the record does not clearly demonstrate whether the … regulations may be attributed to the City or the State." *McDay*, 303 F. App'x at 931. In this case, by contrast, we have reviewed the parole warrant and the applicable regulatory framework.

Second, *McDay* involved a question of state law on which this court is not "the final word." *Deeper Life Christian Fellowship, Inc. v. Sobol*, 948 F.2d 79, 84 (2d Cir. 1991). Whether the parole warrant was facially invalid and therefore afforded the City discretion to release Uviles is a question of state law.

*McDay* relied on state court decisions that had held that a prisoner detained on a parole warrant was entitled to a writ of habeas corpus if the state failed to provide a timely preliminary hearing. *See McDay*, 303 F. App'x at 929 (citing *People ex rel. Levy v. Dalsheim*, 411 N.Y.S.2d 343, 344 (2d Dep't 1978); *People ex rel. Willis v. Travis*, 680 N.Y.S.2d 422, 425 (N.Y. Sup. Ct. 1998)). The New York courts have since clarified that even if a prisoner is entitled to habeas relief, he is not entitled to monetary damages for false imprisonment when he was "arrested pursuant to a facially valid parole warrant and … the short delay in holding the preliminary hearing was not due to misconduct or malfeasance." *Gonzalez v. New York*, 165 A.D.3d 763, 765 (2d Dep't 2018). Such a delay does not amount to false imprisonment because, in those circumstances, "the confinement was privileged." *Id.*; *see also Nazario v. New York*, 884 N.Y.S.2d 580, 588

---

[10] *See McDay*, 303 F. App'x at 931; *McDay v. Travis*, No. 03-CV-5277, 2010 WL 11677998, at *2 (S.D.N.Y. July 9, 2010), *aff'd in part, rev'd in part*, 303 F. App'x 928 (2d Cir. 2008).

(N.Y. Ct. Cl. 2009) ("[E]ven where the confinement is determined to be illegal, as it was here, liability for false arrest and imprisonment may not follow where the warrant authorizing the arrest and confinement was valid on its face when issued."), *aff'd*, 905 N.Y.S.2d 328 (3d Dep't 2010).[11]

According to the New York courts, a parolee may be entitled to habeas relief if he does not receive a timely preliminary hearing following detention on a parole warrant. But whether he is so entitled requires a fact-dependent inquiry. A court may need to consider, for example, whether the record indicates that the parolee waived the preliminary hearing, *see, e.g., People ex rel. Melendez v. Warden*, 214 A.D.2d 301, 303 (1st Dep't 1995), or whether "a legitimate reason exists why the preliminary hearing was continued beyond the statutorily allowed fifteen days," *People ex rel. Manning v. Warden*, No. 250062, 2012 WL 2122470, at *1 (N.Y. Sup. Ct. June 8, 2012); *see also People ex rel. Madison v. Sullivan*, 142 A.D.2d 621, 621 (2d Dep't 1988). If a habeas proceeding must be conducted to determine whether the parolee is entitled to release, the warrant cannot

---

[11] *Cf. Nastasi v New York*, 90 N.Y.S.2d 377, 378-79 (3d Dep't 1949) ("[I]t does not necessarily follow … that a determination of illegality of imprisonment gives rise ipso facto to a claim for damages for false arrest and imprisonment. Since parole was not permissible under the circumstances presented, the declaration of delinquency for parole violation and the acts of the authorities in retaking claimant … and in detaining him … were improper. There is nothing in the record, however, to indicate that the declaration of delinquency and the warrant for claimant's arrest were not entirely valid on their face when issued …. The arresting officers and the confining authorities were under a duty to comply with this declaration and warrant the invalidity of which was not determined until the decision in the habeas corpus proceeding had been handed down."), *aff'd*, 300 N.Y. 473 (1949).

immediately become *facially* invalid when the hearing deadline expires—contrary to the theory that Uviles advances in his claim against the City and that the summary order in *McDay* suggested might be viable. And if the parole warrant remains facially valid, the City does not have the discretion to release a prisoner held pursuant to it. Indeed, the New York courts have clarified that even if the detention is ultimately determined to be unlawful, the confining authorities have not necessarily acted unlawfully but in the absence of misconduct remained under an obligation to comply with a facially valid warrant.

The distinction between the lawfulness of the detention and the lawfulness of the conduct of the prison officials raises the possibility that even if the City had the discretion to release Uviles, it still might not be liable under § 1983.[12]  Because we conclude that the City lacked such discretion because the warrant remained facially valid, we need not separately decide whether Uviles's detention qualified as a short delay that was not attributable to misconduct.

## C

The parole warrant remained valid under state law—and the City was required to enforce it—until the DOCCS lifted the warrant

---

[12] We have explained that "we look to … state law principles to determine the validity of [a § 1983] claim based on false imprisonment," *Russo v. City of Bridgeport*, 479 F.3d 196, 204 (2d Cir. 2007), but ultimately "federal law defines the elements of a § 1983 malicious prosecution claim, and … a State's tort law serves only as a source of persuasive authority rather than binding precedent in defining these elements," *Lanning v. City of Glens Falls*, 908 F.3d 19, 25 (2d Cir. 2018), *abrogated by Thompson v. Clark*, 596 U.S. 36 (2022); *see also Manuel v. City of Joliet*, 580 U.S. 357, 370 (2017) ("In defining the contours and prerequisites of a § 1983 claim, including its rule of accrual, courts are to look first to the common law of torts.").

or a court ordered Uviles's release. The City therefore detained Uviles with a lawful basis and pursuant to a lawful policy. Accordingly, Uviles has not identified a genuine dispute of fact that would allow a reasonable jury to conclude that the City's policy caused a "constitutional injury" to his right to be free of unreasonable seizures under the Fourth and Fourteenth Amendments. *Hu*, 927 F.3d at 104. The district court properly concluded that the state was entitled to judgment as a matter of law.[13]

---

[13] The district court also properly rejected Uviles's § 1983 claim for violation of the Due Process Clause of the Fourteenth Amendment. The Supreme Court has held that an alleged parole violator must be given a preliminary hearing "as promptly as convenient after arrest." *Morrissey v. Brewer*, 408 U.S. 471, 485 (1972). Generally, "a delay of any more than thirty days for [a preliminary] hearing is constitutionally insufficient under *Morrissey*." *Davis v. N.Y.S. Div. of Parole*, No. 07-CV-5544, 2008 WL 3891524, at *8 (S.D.N.Y. Aug. 20, 2008) (citing cases). Uviles was detained for thirty-eight days in total, but he was detained solely on the basis of the parole warrant for only seventeen days. That delay does not violate the constitutional rule described in *Morrissey*. Even if it did, however, we have already explained that the City detained Uviles pursuant to a lawful policy. Uviles has not shown that the City's policy caused widespread unconstitutional overdetentions such that the City's "action was taken with deliberate indifference as to its known or obvious consequences," *Newton*, 779 F.3d at 156, and in any event the City would not be liable under these circumstances for enforcing a policy that state law mandates, *see Vives v. City of New York*, 524 F.3d 346, 353 (2d Cir. 2008) ("[W]e agree with all circuits to address state laws mandating enforcement by municipal police officers that a municipality's decision to honor this obligation is not a conscious *choice*. As a result, the municipality cannot be liable under *Monell* in this circumstance.").

## CONCLUSION

For the foregoing reasons, we affirm the judgment of the district court.

CHOUDHURY, *Judge*, concurring in part and in the judgment:

I concur in the judgment and Part I of the majority opinion.

The facts of this case are troubling. Joel Uviles ("Uviles") was detained on Rikers Island for 17 days on the sole basis of a parole warrant without being given a preliminary hearing before a neutral adjudicator to determine whether there was probable cause to detain him. At the time of his detention in 2018, New York law required that this hearing be held within 15 days of the parole warrant's execution. N.Y. Exec. L. § 259-i(3)(c)(iv) (2018) ("Section 259-i").

I agree with Part I of the majority opinion that the parole warrant used to detain Uviles was "delivered" under New York Executive Law § 259-i(3)(a)(i). In my view, it is critical that the warrant information was properly entered into the system when electronically transmitted to the New York City Department of Correction ("DOC"), which runs the Rikers Island jail. Here there is no dispute that it was. Therefore, any failure to physically deliver a hard copy of the warrant to Rikers was not a basis for denying summary judgment to the City of New York ("City") on Uviles's Fourth Amendment claim brought under 42 U.S.C. § 1983 ("Section 1983").

I part company with the majority on its analysis of Uviles's Fourth and Fourteenth Amendment false imprisonment claim. In my view, the majority's exclusive reliance on the parole warrant's facial validity to dispose of the Fourth Amendment claim is at odds with the Section 1983 jurisprudence of the Supreme Court and this Court. Furthermore, I would not reach the question of whether the challenged detention violated due process because we lack full briefing and argument from the parties on that Fourteenth Amendment question.

Uviles's Fourth Amendment claim is premised on his assertion that the parole warrant became facially invalid at the moment the 15-day deadline for a preliminary hearing expired, and that the City should have known this. This argument raises a question about whether the Fourth Amendment's protection against false imprisonment extends to the detention of a person on a parole warrant that was facially valid when issued, but is asserted to have become invalid due to the subsequent failure to provide a probable cause hearing as required by New York law.

In resolving this Fourth Amendment question, the majority departs from *McDay v. Travis*, 303 F. App'x 928 (2d Cir. 2008) (summary order), which held that the City may be liable under Section 1983 for wrongful imprisonment on a due process theory if its policy caused a parolee's continued detention on a parole warrant even after a probable cause hearing was not provided within the fifteen days as required by Section 259-i(3)(c)(iv). *Id.* at 931. In *McDay*, this Court suggested that the parole warrant may be "void as a matter of law" due to the failure to afford McDay the statutorily required preliminary hearing. *Id.* The majority reasons that *McDay* "involved a question of state law on which this court is not the 'final word.'" Op. at 16.

To be sure, I agree with the majority that the discrete question of whether or not Uviles's parole warrant remained facially valid despite the failure to provide a timely preliminary hearing is one of New York law. However, I disagree that the answer to that question necessarily ends the Fourth Amendment false imprisonment analysis. As set forth below, in reaching its conclusion, the majority incorrectly conflates the issue of the facial validity of the parole warrant, which is an issue of state law, with the separate issue of whether such facial

2

validity extinguishes the Fourth Amendment false imprisonment claim, which is a question of federal law.

The majority relies on *Deeper Life Christian Fellowship, Inc. v. Sobol*, 948 F.2d 79, 84 (2d Cir. 1991), to support its conclusion that "[w]hether the parole warrant was facially invalid and therefore afforded the City discretion to release Uviles is a question of state law." Op. at 16. *Deeper Life* interpreted a state statute—specifically a provision of the New York State Education Law—and does not establish that state courts are the "final word" on the contours of the Fourth Amendment protection against unlawful detention enforced through Section 1983, which is the issue here.

This Court previously held that it looks to "state law principles to determine the validity of [a Section 1983] claim based on false imprisonment." *Russo v. City of Bridgeport*, 479 F.3d 196, 204 (2d Cir. 2007). A decade after *Russo*, however, the Supreme Court clarified in *Manuel v. City of Joliet*, 580 U.S. 357, 370 (2017), that courts should "look first to the common law of torts" when "defining the contours and prerequisites of a § 1983 claim." The Supreme Court explained:

> Sometimes, that review of common law will lead a court to adopt wholesale the rules that would apply in a suit involving the most analogous tort. But not always. Common-law principles are meant to guide rather than to control the definition of § 1983 claims, serving more as a source of inspired examples than of prefabricated components. . . . In applying, selecting among, or adjusting common-law approaches, courts must closely attend to the *values and purposes* of the constitutional right at issue.

3

*Id*. (emphasis added) (internal quotation marks and citations omitted).

This Court applied *Manuel* to "clarify that federal law defines the elements of a § 1983 malicious prosecution claim [under the Fourth Amendment], and that a State's tort law serves only as a source of *persuasive authority rather than binding precedent* in defining these elements." *Lanning v. City of Glen Falls*, 908 F.3d 19, 25 (2d Cir. 2018) (emphasis added), *abrogated on other grounds by Thompson v. Clark*, 596 U.S. 36 (2022)).[1] This Court reaffirmed this holding and reasoning in *Kee v. City of New York*, 12 F.4th 150, 164–65 (2021).

Therefore, in order to determine whether the Fourth Amendment's protection against false imprisonment extends to Uviles—a person detained on a parole warrant without being given a statutorily required probable cause hearing—a court must "closely attend to the values and purposes" of the Fourth Amendment, turn to the common law of torts for guidance, and treat New York law as a source of persuasive authority. *Manuel*, 580 U.S. at 370.

At the time Section 1983 was enacted, the common law of torts recognized that there was a defense to false imprisonment when the detention was pursuant to legal process "issued by a court or officer having authority of law to issue such process" and there was "nothing on the face of the process apprising the officer to whom it is delivered for service, that in the particular case there was no authority for issuing it." T. Cooley, Law of Torts 172 (1880). It also recognized that "[t]he writ may also be void for many other reasons, such as . . . that it was issued without compliance with some statutory requisite which

---

[1] *See also Singleton v. City of New York*, 632 F.2d 185, 195 (2d Cir. 1980) ("[S]tate tort law does not define or limit the scope of liability under § 1983" in the malicious prosecution context).

is a condition precedent, and shows the defect on its face, or for other defects" arising from a malicious prosecution. *Id*. at 174, 180–81.

The common law of torts at the time of Section 1983's enactment did not use the term "privileged" to describe detention based on a facially valid legal process, but nevertheless recognized that detention on a facially valid warrant was a defense against false imprisonment. It recognized that a facially valid warrant could be invalid if a "condition precedent" to its issuance was not followed, but it did not explicitly recognize that detaining authorities' failure to abide by *subsequent* legal requirements would invalidate the detention on a facially valid warrant, other than the types of failures actionable in a malicious prosecution claim. *See id*. at 174.[2]

Turning to New York law, because Uviles was arrested on a parole warrant issued by the New York Department of Corrections and Community Supervision ("DOCCS"), New York was the legal custodian of Uviles while the City was his physical custodian. N.Y. Exec. L. § 259-i(2)(b). In *Gonzalez v. State*, 85 N.Y.S.3d 523 (2d Dep't 2018), the Second Department considered a false imprisonment claim under New York law by a person detained on a parole warrant who was provided a preliminary hearing four days after the timeframe required under New York Executive Law § 259-i(3)(c)(i) and (iv). The court recognized that an element of the claim is to prove that the challenged confinement was not privileged. *Id.* at 524. This element

---

[2] At least one court recognized that "an action for false imprisonment would still lie" even where "the process and proceedings" causing a person's detention "were perfectly valid and regular, . . . in case of their abuse or misuse or service at an unlawful time . . . ." *Castro v. De Uriarte*, 12 F. 250, 254 (S.D.N.Y. 1882) (citing *Holley v. Mix*, 3 Wend. 350 (N.Y. Sup. Ct. 1829); *Doyle v. Russell*, 3 Barb. 300 (N.Y. Gen. Term. 1859); *Pease v. Burt*, 3 Day 485 (Conn. 1806)).

was established as a matter of law where the State "submitt[ed] evidence" that "the claimant was arrested pursuant to a facially valid parole warrant *and* that the *short delay* in holding the preliminary hearing was *not due to misconduct or malfeasance*" and where "[i]n opposition, the claimant failed to raise a triable issue of fact." *Id.* at 524–25 (emphasis added).[3]

Applying these common law approaches while "closely attend[ing] to the values and purposes" of the Fourth Amendment, *Manuel*, 580 U.S. at 370, a Section 1983 claim against unlawful detention on a parole warrant may lie, notwithstanding a facially valid parole warrant, if the failure to provide a timely preliminary hearing is due to "misconduct or malfeasance" or results in something more than a "short delay." *Gonzalez*, 85 N.Y.S.3d at 525.

Here, Uviles has not raised a question of fact as to the facial validity of the parole warrant when the 15-day deadline for a preliminary hearing expired. Nor has he pointed to facts in the record demonstrating that the detention was due to "misconduct or malfeasance."

Whether the delay in giving Uviles a preliminary hearing was "short" turns on when the parole warrant was executed. While the warrant was issued on May 23, 2018, it was not executed until June 12, 2018, when it became the sole basis for Uviles's detention under

---

[3] In *Nazario v. State*, the New York Court of Claims went further than *Gonzalez* to conclude that "[t]here is simply no remedy against the State for an illegal confinement if it is made pursuant to an order valid on its face when issued." *Nazario v. State*, 884 N.Y.S.2d 580, 588, *aff'd*, 905 N.Y.S.2d 328 (3d Dep't 2010). *Nazario* did not concern the denial of a preliminary hearing and failure to make a probable cause determination and is therefore distinguishable from Uviles's case.

6

New York law. *People ex rel. Mitchell v. Warden*, 49 Misc. 3d 1214(A), 29 N.Y.S.3d 848 (N.Y. Sup. Ct. 2015) (citing *Moody v. Daggett*, 429 U.S. 78, 87 (1976)).[4] Thus, Uviles was detained for two days past the deadline for holding a preliminary hearing.

On this factual record, Uviles has failed to raise a question of fact that would preclude summary judgment for the City on his Fourth Amendment claim. I therefore concur that the district court did not err.

The majority concludes that the City "lawfully detained Uviles," Op. at 4,[5] but does not acknowledge that New York violated Uviles's right to a timely preliminary hearing under Section 259-i. Uviles was never provided a preliminary hearing to assess probable cause, much less a hearing within the required 15 days. Uviles's parole officer acknowledged the failure to provide Uviles timely notice of the charge against him and the date of a preliminary hearing, even if she did so late and did not initially complete the necessary form, which delayed Uviles's release. The record does not raise any questions about whether Uviles waived his right to a preliminary hearing or otherwise consented to detention on the parole warrant. To the contrary, Uviles posted bail on the state charge, which was

---

[4] Under New York law, a parole warrant may be executed when the warrant "serves as the sole or exclusive basis for . . . detention," *People ex rel. Mitchell*, 2015 WL 7160133, at *4, or "on the date the warrant was served on [the individual] at the correctional facility where he was incarcerated for related criminal charges," *People ex. rel. Morant v. Warden*, 35 A.D. 3d 208, 209 (1st Dep't 2006). Here, it is undisputed that Uviles was never served with the parole warrant. Therefore, the parole warrant was executed on the date it became the sole basis for Uviles's detention.

[5] *See also* Op. at 12, 19 (noting that the City detained Uviles "with a lawful basis").

eventually dismissed, and he and his family pleaded with DOCCS and Rikers to release him.

On this record, New York clearly violated Section 259-i. Indeed, the majority acknowledges that "a parolee may be entitled to habeas relief if he does not receive a timely preliminary hearing following detention on a parole warrant." Op. at 17. Where habeas is warranted, the detention is unlawful. *See* N.Y.C.P.L.R. § 7002(a) (2018) (habeas is only available where "[a] person [is] *illegally* imprisoned or otherwise restrained in [their] liberty") (emphasis added).

Finally, I do not join the majority's affirmance of the district court's June 30, 2020 order dismissing Uviles's Section 1983 claim to enforce the Fourteenth Amendment right to due process on the basis that the 17 days that Uviles was detained solely pursuant to the parole warrant did not violate the constitutional rule described in *Morrisey v. Brewer*, 408 U.S. 471, 485 (1972), and that the City detained Uviles "pursuant to a lawful policy." Op. at 19 n.13.

The parties did not brief this argument, although Uviles sought to preserve it in a footnote, stating only that "to the extent this Court may deem the unlawful detention a Fourteenth Amendment violation, the operative pleading alleged both theories."[6] I would not opine on the due process question without the benefit of full briefing and argument from the parties, neither of which were provided here. Instead, as the City urges, I would find that Uviles waived or forfeited this argument. *See In re Demetriades*, 58 F.4th 37, 54 (2d Cir. 2023) (where a party refers to an issue in only "a perfunctory manner, unaccompanied by any effort at developed argumentation, it must be

---

[6] Br. of Appellant at 16 n.13; *see also* Reply of Appellant at 17 n.6 (arguing that Uviles did not waive this issue by virtue of footnote 13 of Uviles's opening brief).

deemed waived[]—or, more precisely, forfeited.") (internal citation, quotation marks, and alterations omitted); *see also Genomma Lab USA, Inc. v. Carruitero*, No. 22-3109-CV, 2023 WL 8520181, at *2 (2d Cir. Dec. 8, 2023) (finding argument waived where appellant's brief "d[id] not contain the applicable standard of review" and "neglect[ed] to apply the case law to facts to raise an argument for reversing the district court's conclusions").

For these reasons, I concur only in part and in the judgment.